Charles Edward MANLEY, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 542, 543, Dockets 33905, 33906.

United States Court of Appeals,
Second Circuit.

Argued Feb. 11, 1970.

Decided Oct. 16, 1970.

Gerard L. Goettel, New York City, for appellant.

Ronald L. Fancher, Asst. U. S. Atty. (H. Kenneth Schroeder, U. S. Atty., Western District of New York, on the brief), for appellee.

Before LUMBARD, Chief Judge, and WATERMAN, MOORE, FRIENDLY, SMITH, KAUFMAN, HAYS, ANDERSON and FEINBERG, Circuit Judges.

LUMBARD, Chief Judge:

These are two appeals from orders of the Western District which by our order were consolidated and heard together. The first is from an order dated February 14, 1969, revoking Manley's probation under 18 U.S.C. § 4208(a) (2) (1964), and sentencing him to a term of five years' imprisonment. The second is from a decision and order of April 25, 1969, denying Manley's motion under 28 U.S.C. § 2255 (1964) to vacate the sentence and set aside the judgment of conviction entered on July 2, 1968, on Manley's plea of guilty to a one count indictment charging interstate transportation of a stolen motor vehicle, 18 U.S.C. § 2312 (1964). After this case was argued before a panel consisting of Judges Lumbard, Friendly and Feinberg, the active circuit judges voted to consider the case *in banc* because of the importance of the issues involved. We find no error and affirm.

On the night of March 21, 1967, Manley completed a six month sentence in the McKean County, Pennsylvania, jail. While in prison he had obtained some amphetamines which he took that afternoon; upon being released, he had a few drinks. During the night of the 21st, he travelled about 50 miles, from Pennsylvania to his home town of Gowanda, New York. The government charged that this trip was taken in a car Manley had stolen earlier that evening in Bradford, Pennsylvania. The car was found abandoned in Gowanda the next morning by the local police.

In Gowanda, Manley went to the apartment of a lady friend, where he spent the night. Using an old, outstanding warrant involving a fraudulent check, local police went to the apartment on the morning of March 22, arrested Manley, and took him to the city jail. Without a warrant they returned to the apartment several hours later and conducted a thorough search, in the course of which they found a man's black jacket in the pocket of which was a set of car keys for the stolen car.

While in jail on the state check charge Manley was interviewed several times by the FBI. Initially he denied having stolen the automobile. Later, allegedly after being given some tranquilizing drugs at the request of state authorities, he was again interviewed by the FBI and made certain damaging admissions connecting him with the car theft. On May 3, 1967, Manley was indicted for violation of the Dyer Act, 18 U.S.C. § 2312 (1964). He was arraigned nine months later, after serving a sentence for an unrelated state charge; upon arraignment a lawyer was appointed and Manley pleaded not guilty.

Assigned counsel then brought on motions to suppress the inculpatory statements and the evidence found at the lady friend's apartment. A hearing was begun before Judge Henderson, but was adjourned to allow Manley time to gather

certain witnesses and records. To keep the matter moving, the judge ordered that a jury be impaneled in the interim.

In the section 2255 motion, Manley alleged that while the jury was being selected his lawyer told him of a tentative plea arrangement: if he would plead guilty, he would receive only two years' probation on a charge carrying a maximum penalty of five years' imprisonment and a $5,000 fine. He was told to decide quickly whether to plead, as the court was waiting. Under the circumstances, a plea would require Manley to abandon his attack on the admissibility of the confession, the coat, and the keys, virtually the entire case for the government. Following the advice of counsel, he entered a guilty plea and was duly placed on two years' probation in the custody of his mother.

In light of a history of a stormy relationship between Manley and his mother, the custody provision was questionable. Less than two months after sentencing, Manley's mother applied to the Probation Office to have him recommitted, making a variety of vague charges. At the lengthy probation revocation hearing that followed, the primary charge was that Manley had assaulted her by grabbing her housecoat and threatening her with a belt. During the course of the hearing, the court indicated that it felt her testimony was unreliable and her attitude towards her son incomprehensible. She admitted that she considered her custody an imposition and indicated that she preferred having him in jail.

Despite some reservations the court found that there had been a violation of probation. Rather than ordering imprisonment for the remainder of the two year probation term, the court—noting "that it may be that it was a basic mistake to have you sent to Shinglehouse, to your mother's house at all"—committed Manley for study and a recommendation on sentence by the Bureau of Prisons under 18 U.S.C. § 4208(b) (1964).

The report was very unfavorable to Manley and recommended that he be imprisoned for a term of five years, the statutory maximum. Faced with this adverse report, the court resentenced Manley to five years' imprisonment, which he is now serving.

Manley raises four challenges on these appeals. On the section 2255 motion to vacate his conviction, he complains that the plea was invalid because it was not taken in conformity with Rule 11 of the Federal Rules of Criminal Procedure which requires that the judge satisfy himself that there is a "factual basis for the plea." The Rule provides in part:

> "The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of nolo contendere without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."[1]

---

1. In its Standards Relating to Pleas of Guilty, the American Bar Association Project on Minimum Standards for Criminal Justice recommends a procedure similar to that found in Rule 11:

    1.6 Determining accuracy of plea

    Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as may satisfy it that there is a factual basis for the plea.

The purpose of the inquiry is to assure that the acts which, by his plea, defendant admits did in fact take place and constitute the offense with which he is charged. See 1 C. Wright, Federal Practice and Procedure, § 174 at 376 (1969). Rule 11 does not require that the trial judge make a formal determination of guilt nor that he be satisfied beyond a reasonable doubt that the defendant would be convicted if he went to trial. Rather,

Without holding a hearing, Judge Henderson denied the motion to vacate and in his decision accompanying the order he made no specific findings regarding a factual basis for the plea.

In McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), as limited by Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969), the Supreme Court held that the trial judge must follow the language of Rule 11 exactly when taking a plea after April 2, 1969. He must personally question the defendant at the time of pleading about the defendant's knowledge of the nature of the charge and the consequences of the plea. Further, he must demonstrate on the record that he has satisfied himself that there is a factual basis for the plea.

Manley's plea of guilty was taken on July 2, 1968, after the revision of Rule 11 went into effect on July 1, 1966, but before April 2, 1969, the effective date of *McCarthy*.

■ With respect to pleas of guilty taken prior to April 2, 1969, we construe the holdings of *McCarthy* and *Halliday* not to require any further inquiry into whether the judge in accepting the plea of guilty had satisfied himself that there was a factual basis for the plea if it is apparent in the record of the case that there was a factual basis for the plea which was known to the judge who imposed sentence. As the court said in *Halliday*, 394 U.S. at 833, 89 S.Ct. at 1499:

> Thus, in view of the general application of Rule 11 in a manner inconsistent with our holding in *McCarthy*, and in view of the large number of constitutionally valid convictions that may have been obtained without full compliance with Rule 11, we decline to apply *McCarthy* retroactively. We hold that only those defendants whose guilty pleas were accepted after April 2, 1969, are entitled to plead anew if

their pleas were accepted without full compliance with Rule 11.

■ The charge against Manley was simply that he had knowingly driven a stolen car from Pennsylvania to New York in violation of 18 U.S.C. § 2312. The car was stolen in Bradford, Pennsylvania, some time on March 21, 1967. At 5:00 P.M. that same day, Manley was released from the McKean County Jail at Smithport, Pennsylvania, nearby to Bradford. Next morning the car was found abandoned in Gowanda, New York, where Manley was arrested later that same day in the apartment of Nancy Smith, his girl friend. A man's black jacket was found in the apartment and in one pocket police found two car keys which fit the 1967 Chevrolet stolen in Bradford the day before. While first denying any connection with the Chevrolet, Manley, on March 29, advised the jail authorities where he was detained that he wanted to talk to the FBI. The next day, FBI Agent Angle visited Manley who admitted the theft of the Chevrolet, after first being advised of his rights and signing a waiver.

All this was made known to Judge Henderson when a hearing was held before him on June 18, 1968, on Manley's motion to suppress his statements to the FBI and the jacket seized by the Gowanda police. It was two weeks later, on July 2, 1968, after a jury had been picked, when Manley decided, after consultation with and advice from his counsel, to plead guilty.

Thus the record shows that Judge Henderson who took the plea of guilty knew that there was an ample factual basis for the charge to which Manley pleaded guilty. No purpose would be served in holding a hearing, as was done in George v. United States, 421 F.2d 128 (2d Cir. 1970), so that Judge Henderson could himself state on the record that which the record already shows was before him.

to protect the unusual defendant who might be entering an inaccurate plea, it requires that the trial judge make a reasonable inquiry into the case against the defendant and satisfy himself that the plea has a factual basis.

This case is unlike Schworak v. United States, 419 F.2d 1313 (2d Cir. 1970), where Judge Zampano vacated the plea because he had not satisfied himself that Schworak knew the consequence of the plea or that there was a factual basis for it.

■ Of course there will be pleas of guilty in the period between July 1, 1966, when the amendment of Rule 11 became effective, and April 2, 1969, where the record does not show that the sentencing judge knew that there was a factual basis for the plea as it does here. If the existence of a factual basis is questioned in such a case and there is reason to believe that a hearing would show that the court was aware of a factual basis for the plea before judgment was entered upon it, then the district court should hold a hearing and make a finding thereon. If such a finding can be made, we see no need to vacate the plea. Accordingly, we overrule United States v. Steele, 413 F.2d 967 (1969) to the extent that it holds that the plea must be vacated rather than remanding the case for a hearing where it appears that the necessary finding might be made by the district court.

The three other contentions raised by Manley can be disposed of summarily. As mentioned above, the motion to suppress was never decided since Manley pleaded guilty while it was pending. On his § 2255 motion to vacate the plea, Manley requested the court to hold a hearing on the admissibility of the evidence, evidently contemplating that if it were held inadmissible his plea would be void as coerced. McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), deprives Manley of the major premise of his argument, as it is now settled that even if induced by the existence of inadmissible evidence the plea is valid.

■ He next argues that the court, after revoking his probation, violated his constitutional rights by imposing a five year sentence in place of the two year probation. The procedure used by Judge Henderson here is authorized by 18 U.S.C. § 3653 (1964), which provides that "if imposition of sentence was suspended," the court upon revocation "may impose any sentence which might originally have been imposed." Congress under this statute gave trial judges discretion to (1) impose sentence before probation is awarded, or (2) suspend imposition of sentencing until such time as probation may be revoked. Under the first alternative, but not the second, defendant commences his probationary period knowing that a definite term of imprisonment follows parole revocation. Roberts v. United States, 320 U.S. 264, 64 S.Ct. 113, 88 L.Ed. 41 (1943). Here, Judge Henderson suspended imposition of sentence. Cases such as Williams v. United States, 310 F.2d 696 (7th Cir. 1962), where defendant's five year sentence was suspended and he was then resentenced to ten years imprisonment following revocation of probation, are therefore inapposite. See Baber v. United States, 368 F.2d 463 (5th Cir. 1966); Smith v. United States, 297 F.Supp. 131 (W.D.Mo.1968). The argument that this provision amounts to double jeopardy has consistently been rejected. See, e. g., Thomas v. United States, 327 F.2d 795 (10th Cir.), cert. denied, 377 U.S. 1000, 84 S.Ct. 1936, 12 L.Ed.2d 1051 (1964). Nothing in North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), is to the contrary, as that case involves a new sentence imposed after retrial following a successful appeal.

■ Finally, Manley argues that the judge's reliance on an inaccurate presentencing report violated his constitutional rights. Judge Henderson, however, allowed Manley's counsel to review the probation report at the time of sentencing and to point out errors therein to the court. Hence, Manley's claim is only that he was not provided an opportunity to present evidence in rebuttal of the report's assertions. We think that the latitude given Manley's counsel at sentencing was sufficient to protect his fundamental rights.

The court thanks Gerard L. Goettel for his able and conscientious efforts on behalf of petitioner.

Affirmed.

FRIENDLY, Circuit Judge (concurring in the result):

I agree that the record shows that, before taking Manley's guilty plea, the district judge had ample grounds for being satisfied of the factual basis for it. But I cannot accept the opinion's assumption that if the case were otherwise, we would be required to order a hearing to determine whether the judge had such grounds and to direct that a defendant must be allowed to replead unless the hearing shows that he did— with respect to a plea antedating April 2, 1969. Such a holding would fly in the face of the clear language of Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969), would continue the confusion caused by our past failure to follow that decision, and would place us in opposition to two other courts of appeals, Meyer v. United States, 424 F.2d 1181, 1189 (8 Cir. 1970); United States v. Tucker, 425 F.2d 624 (4 Cir. 1970).

F.R.Cr.P. 11 was changed, effective July 1, 1966, in several important respects. The Court was not to accept a guilty plea "without first addressing the defendant personally and determining that the plea was made voluntarily with understanding of the nature of the charge and the consequences of the plea." Also "the court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea." In McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418, decided April 2, 1969, the defendant claimed on a direct appeal that the judge had accepted his guilty plea without inquiring whether he understood the nature of the charge and without determining whether there was a factual basis for the plea. The Court held that failure to address the defendant personally and determine that the plea was made voluntarily with understanding of the nature

of the charge and the consequences of the plea entitled a defendant who had appealed to replead, even though the record or a subsequent hearing might show that the plea had in fact been so made. Failure to ascertain a factual basis for the plea would have similar consequences even though the existence of such a basis was shown by the record of the later hearing on sentence.

The Court's evident concern with the practical effect of this ruling led to an early pronouncement concerning its application to pleas taken before the McCarthy decision. In Halliday v. United States, 394 U.S. 831, 833, 89 S.Ct. 1498, 1499, 23 L.Ed.2d 16, decided only a month later, the Court stated in the clearest terms:

Thus, in view of the general application of Rule 11 in a manner inconsistent with our holding in McCarthy, and in view of the large number of constitutionally valid convictions that may have been obtained without full compliance with Rule 11, we decline to apply McCarthy retroactively. We hold that only those defendants whose guilty pleas were accepted after April 2, 1969, are entitled to plead anew if their pleas were accepted without full compliance with Rule 11.

The Court thus made crystal-clear what the result should be with respect to pleas antedating April 2, 1969, where the judge had not satisfied himself of a factual basis. Conviction on such a plea is "constitutionally valid," even under Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), if the plea was voluntary and understanding. Where there is *only* a violation of the satisfaction-as-to-factual-basis provision of amended Rule 11, a defendant is not entitled to replead. Such was the precise and correct holding of the Fourth Circuit in United States v. Tucker, *supra*.

While Halliday's attack was on the failure of the judge to make "an explicit inquiry whether it [the plea] was voluntarily and understandingly made," 394 U.S. at 835, 89 S.Ct. at 1500 (concurring

opinion of Mr. Justice Harlan), nothing in the Court's language or in good sense would justify a different principle where the claim was the judge's failure to satisfy himself of a factual basis. Neither can it be successfully maintained that the Court was speaking only of defendants like Halliday who had pleaded *before* July 1, 1966. The language is clear as can be, and the Court would hardly have bothered to say that a defendant who had pleaded before July 1, 1966, could not take advantage of a change in Rule 11 that did not become effective until then. Moreover, any such restricted view is refuted by the Court's refusal to adopt the position expressed in the concurring opinion of Mr. Justice Harlan, who joined in affirming Halliday's conviction because voluntariness had been determined at a § 2255 hearing but saw no reason "why other federal prisoners whose pleas were accepted in plain violation of the requirements of the amended rule should be deprived of the relief accorded McCarthy," 394 U.S. at 834, 89 S.Ct. at 1500.

It is true that in *Halliday* the Court made clear that its limitation of the effect of *McCarthy* on pleas taken before April 2, 1969 did not deprive a defendant of "appropriate post-conviction remedies to attack his plea's voluntariness," 394 U.S. at 833, 89 S.Ct. at 1499—in other words, an attack upon the plea as *constitutionally* defective. But it surely does not follow that in consequence a pre-*McCarthy* defendant complaining merely of a violation of amended Rule 11 must be given something else—which the Supreme Court has said he should not have. Indeed, *Halliday* was scarcely necessary to make clear that violation of a Rule of Criminal Procedure, without more, is an insufficient basis for relief *under § 2255*, Hill v. United States, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). Yet the majority puts a pre-*McCarthy* plea substantially on the same footing as a post-*McCarthy* one in this respect since nothing in *McCarthy* requires that the judge's satisfaction with respect to factual basis be established by the pleading minutes rather than by other record material known to the judge *before* accepting the plea.

In George v. United States, 421 F.2d 128 (2 Cir. 1970), we followed *Halliday* by holding that a defendant who had pleaded guilty after July 1, 1966 and claimed that the judge had not personally determined voluntariness was entitled to a hearing with respect to the *fact* of voluntariness and to nothing more. That opinion, however, did not mention United States v. Steele, 413 F.2d 967 (1969), where we had earlier fallen into a misinterpretation of *Halliday,* and did not properly characterize Schworak v. United States, 419 F.2d 1313 (2 Cir. 1970), which had relied on *Steele.* Now the majority partially overrules *Steele* but attempts to salvage some of it along with *Schworak* by holding that where the pleading minutes do not disclose whether the judge satisfied himself of the factual basis for the plea, it must be determined whether he did; if he did not, presumably the plea must be vacated, even though the plea was pre-*McCarthy* and attack is made under § 2255. Such a holding is in direct contravention of *Halliday* and *Hill.*

I submit, with deference, that the only course which will afford some measure of intelligibility and guidance for district judges in this circuit is for the court *in banc* to overrule *Steele* and *Schworak* and return to the path the Supreme Court so clearly delineated for us. Indeed, in the long period this case has been under advisement, a panel, without citation of those cases, has handled the problem here presented in the proper way. See United States v. Malcolm, 432 F.2d 809, 812 fn. 1 (2 Cir. 1970).

While I thus join with the majority for affirmance, I would hope that Chief Judge Henderson might see fit to reconsider the five-year sentence. There may be justifying circumstances not known to us, but on the facts presented the criminal process seems to have reached an exceedingly harsh result in this case.