**Bolivar IRIZARRY, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 282, Docket 74–1866.**

United States Court of Appeals Second Circuit.

Argued Nov. 18, 1974.

Decided Dec. 19, 1974.

As Amended Jan. 23, 1975.

Stephen Gillers, New York City (Metrick & Ostrow, Seymour Ostrow, New York City, of counsel), for appellant.

Lee A. Adlerstein, Asst. U. S. Atty. (David G. Trager, U. S. Atty., E. D. N. Y., Raymond J. Dearie and Thomas R. Pattison, Asst. U. S. Attys., of counsel), for appellee.

Before SMITH, HAYS and MANSFIELD, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Bolivar Irizarry appeals from an order of the United States District Court for the Eastern District of New York, Mark A. Costantino, *Judge*, denying his motion under 28 U.S.C. § 2255 to vacate a judgment of conviction for conspiracy to possess and distribute cocaine, entered upon that court's acceptance of Irizarry's plea of guilty. Irizarry attacks that judgment on the ground that the district court accepted his guilty plea in violation of Rule 11, Fed.R.Crim.P., in that it failed to establish on the record at the time of the plea that the plea was entered with an understanding of the nature of the charge and that there was a factual basis for the plea. The district court rejected these contentions. We hold that at the time of the plea there was a failure sufficiently to comply with the requirement of Rule 11 that the court, by "addressing the defendant personally," determine "that the plea is made . . . with an understanding of the nature of the charge. . . ."

We therefore reverse and remand to enable Irizarry to plead anew.

## I. THE FACTS

This is not the first time that the conspiracy alleged in this case has been before this court; in United States v. Gonzalez, 488 F.2d 833 (2d Cir. 1973), we reversed the conviction of one of Irizarry's co-defendants. There is no need to repeat the detailed description of the events leading up to the arrests of the alleged co-conspirators set forth in *Gonzalez*; the following skeletal outline will suffice.

On October 7, 1972, one Jose Valenzuela-Correa was arrested at John F. Kennedy International Airport by Customs officials who discovered approximately four pounds of cocaine strapped to his body. Correa, apparently recognizing the difficulty of concocting a plausible explanation in such circumstances, agreed to cooperate with the authorities, and a controlled delivery of the cocaine was arranged. Correa went to a preliminary meeting with Gonzalez, the purchaser of the drugs, to set up the details. Gonzalez recruited Irizarry to make the actual pickup at Correa's motel room. Irizarry went to the motel and established his identity to Correa's satisfaction. As he inspected the cocaine, he was arrested.

Ten days later, on October 19, 1972, Irizarry, Correa, Gonzalez and "John Doe, also known as Mario 'C'" (a Chilean acquaintance of Correa's, named by him as the seller of the cocaine) were indicted. The seven-count indictment charged conspiracies to import, possess and distribute the cocaine, and the corresponding substantive counts. Irizarry himself was named only in counts three (conspiracy to possess and distribute), six (possession with intent to distribute) and seven (distribution). On January 15, 1973, Correa entered a guilty plea to count three, conspiracy to possess and distribute. Two weeks later, on January 29, Irizarry entered a plea to the same count. Whether the colloquy that took place at that time satisfied Rule 11 is the issue on this appeal; the relevant

portion of the transcript is set forth in the margin.[1] On April 9, 1973, Irizarry was sentenced to eight years imprisonment and a special parole term of five years, and the charges against him under counts six and seven were dismissed.

On March 13, 1974, Irizarry moved the district court (a) to reduce the special parole term to three years, since at the time the plea was entered the court had stated that three years was the maximum special parole term he could have received; (b) to correct a clerical error in the judgment, which stated erroneously that Irizarry had been found guilty of conspiracy to import, rather than conspiracy to possess and distribute; and (c) to vacate the judgment entirely, on the ground that there had not been compliance with Rule 11. The court granted the motion as to (a) and (b), but denied it as to (c). It is that denial which Irizarry challenges on this appeal.

## II. IRIZARRY'S UNDERSTANDING OF THE NATURE OF THE CHARGE

Rule 11 provides:

A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere*. The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea.

■ Irizarry claims that the district court did not make a sufficient determination of whether he understood the nature of the charge, because its questioning was directed not at the charge of conspiracy to possess and distribute, but rather at the charge of conspiracy to import. In support of this argument, he points to the erroneous judgment of conviction and the fact that, in its opinion denying his present motion, the district court referred to statements made by Correa when he entered his guilty plea. We think this claim to be farfetched. There was no indication that the district court had smuggling in mind during the questioning of Irizarry; the inquiry was focused rather on Irizarry's role in going to Correa's motel room to pick up the

1. The Court: Now, the charge to which you are pleading guilty, under the United States Code is a charge of conspiracy.

Now, you must tell this Court in your own words, what conspiracy you say you committed?

Defendant Irizarry: Well, I know I was— that I was supposed to pick up at the time—

The Court: What's that?

Defendant Irizarry: I knew what I was going to pick up. That it was cocaine.

The Court: You were going to pick up cocaine?

Defendant Irizarry: Right.

The Court: Of course, you can't conspire with yourself.

Defendant Irizarry: No.

The Court: In order to conspire, you have to have somebody else to conspire with. Is that true?

Defendant Irizarry: Yes.

The Court: Was there anyone else that you were working with in this agreement?

Defendant Irizarry: No. I was told by someone else to pick up that package.

The Court: You were told by someone else to pick up that package?

Defendant Irizarry: Yes.

The Court: And as a result of that conversation with someone else, you then did pick up the package?

Defendant Irizarry: I went to pick it up and I was caught before I picked it up.

The Court: What's that?

Defendant Irizarry: I was caught by the Federal agents.

The Court: You were caught. But you went with the—

Mr. Stechel: Could we first—

The Court: From whom?

Defendant Irizarry: This fellow named at the bar—

Mr. Stechel: From whom did you pick up the cocaine?

Defendant Irizarry: I went to a hotel room. The guy—Valenzuela. That's the name.

cocaine for Gonzalez. In addition, the erroneous judgment was merely a clerical error, which there is no reason to impute to the court. Finally, the charge to which Correa pled guilty was not, as Irizarry claims, conspiracy to import, but rather conspiracy to possess and distribute—the same charge to which Irizarry entered his guilty plea. Thus, to the extent the district court's reference to Correa, in an opinion dated fifteen months after Irizarry's plea, can have any bearing whatever on the court's thinking at the time it accepted that plea, it supports the proposition that the court's questions were directed at the correct charge.

■ That Irizarry's principal argument carries no weight does not dispose of the appeal, however, for the very fact that such an argument could be made at all raises questions regarding compliance with Rule 11. If, at the time of the plea, the trial court addresses the defendant personally to determine his understanding of the nature of the charge, it would seem that the identity of the charge would, virtually as a matter of definition, be spelled out with sufficient precision to preclude the subsequent claim that the court had the wrong charge in mind. In fact, such a claim is not precluded in this case because the full charge—conspiracy to possess and distribute cocaine—was never even identified. The closest that the court came was to identify the charge as "conspiracy"; conspiracy *to do what* was never mentioned. In addition, the court's discussion of the nature of a conspiracy charge was limited to statements that "you can't conspire with yourself" and "you have to have somebody else to conspire with"—hardly an adequate probing of the nature of conspiracy.

Finally, at no time was Irizarry asked whether he understood the nature of the offense with which he was charged, nor did he volunteer that information, nor did he say anything from which such an understanding might be inferred. Rule 11 forbids the acceptance of a guilty plea in such circumstances.

The standards for compliance with Rule 11 were set forth in McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). That decision stressed that the defendant's understanding of the charge must be established through personal questioning by the trial judge; to the extent that he "resorts to 'assumptions' not based upon recorded responses to his inquiries," *id.* at 467, 89 S.Ct. at 1171, he fails to comply with the Rule:

> There is no adequate substitute for demonstrating *in the record at the time the plea is entered* the defendant's understanding of the nature of the charge against him.

*Id.* at 470, 89 S.Ct. at 1173 (emphasis in original).[2] It follows as a matter of course from *McCarthy* that there can be no compliance with Rule 11 where the charge is never even fully identified.

■ Moreover, even if the charge had been identified, the court's discussion of conspiracy did not pass muster under Rule 11. Just how much explanation is necessary in each particular instance will vary from case to case. *McCarthy, supra*, 394 U.S. at 467 n. 20, 89 S.Ct. at 1171 n. 20. The determination will depend, *inter alia*, upon the complexity of the crime charged. Eagle Thunder v. United States, 477 F.2d 1326, 1328 (8th Cir.), cert. denied, 414 U.S. 873, 94 S.Ct. 142, 38 L.Ed.2d 92 (1973).[3] That was a

---

2. In Manley v. United States, 432 F.2d 1241, 1244 (2d Cir. 1970) (*en banc*), this court stated that the defendant's knowledge of the nature of the charge must be established through personal questioning by the trial judge.

3. The court in *Eagle Thunder* indicated that other factors to be considered would include "the defendant's age and record and whether he was represented by counsel." 477 F.2d at

1328. To this list we would add his intelligence, education, and ability to comprehend what was being said to him. This last factor would encompass any language barrier that might exist. In this case, the government contended at oral argument that Irizarry's response of "No" to the court's question, "Was there anyone else that you were working with in this agreement?" should not be construed as a denial of participation in a conspiracy

case of assault with a dangerous weapon—a relatively simple crime. It was held that Rule 11 was complied with where the court asked the defendant if he "did wilfully, knowingly and unlawfully assault Moses Anderson McBride with a dangerous weapon," and the defendant answered affirmatively. *Id.* On the other hand, where the charge is more complicated, more explanation is necessary. In Majko v. United States, 457 F.2d 790 (7th Cir. 1972), the defendant was charged with a crime in violation of state law on a federal enclave, under 18 U.S.C. §§ 7, 13; the court held: "Reading the indictment and asking whether a defendant has discussed the charge with his attorney does not satisfy *McCarthy.*" *Id.* at 791. And in United States v. Cody, 438 F.2d 287 (8th Cir. 1971), where the defendant was charged with making a false and fictitious statement to a licensed firearms dealer in order to buy a firearm, it was held that the trial court improperly accepted a guilty plea after reading the indictment

to the defendant and asking if counsel had explained the charges.[4]

In this case, the district court started out with good intentions to explain the law of conspiracy to Irizarry and elicit his understanding of such a charge. However, that inquiry was sidetracked, never to be resumed, after the following brief exchange took place:

> The Court: Of course, you can't conspire with yourself.
>
> Defendant Irizarry: No.
>
> The Court: In order to conspire, you have to have somebody else to conspire with. Is that true?
>
> Defendant Irizarry: Yes.

This limited explanation of conspiracy does not meet the requirement of *McCarthy* that the court determine the defendant's "understanding of the essential elements of the crime charged." 394 U.S. at 471, 89 S.Ct. at 1173. Conspiracy is a somewhat complicated crime, and, while the court need not explore every nook and cranny of conspiracy law before accepting a guilty plea,[5] it must at

---

because Irizarry is not completely fluent in English and probably misunderstood the question. If Irizarry does have a language problem, that would have been all the more reason for explaining the charges in greater detail.

4. In Paradiso v. United States, 482 F.2d 409 (3d Cir. 1973), it was held that reading the indictment may satisfy the requirement that the defendant's understanding of the charge be determined. Referring to *Majko* and *Cody*, the court observed:

> Two circuits seem to say that reading the indictment is not enough to satisfy the requirement that the trial court ascertain the factual basis of the plea. [Citations omitted.] There is, however, no indication that they would extend this holding to the element of the defendant's understanding of the nature of the charges.

*Id.* at 414 n. 3. If, in the second sentence of this excerpt, the court is saying that *Majko* and *Cody* did not hold that, under the facts of those cases, reading the indictment was insufficient, we would be compelled to disagree. The court in *Cody* clearly indicated that the "substance of the indictment was read to the defendant," 438 F.2d at 288, and held that this, coupled with an inquiry as to whether counsel had explained the charges, was insufficient to determine the defendant's understanding. *Majko* specifically relied on

*Cody* for this proposition. We believe, however, that it is more plausible to read *Paradiso* as saying that *Majko* and *Cody* did not hold that reading the indictment can *never* constitute an adequate determination of the defendant's understanding of the nature of the charge. With this interpretation we would agree. We cite *Majko* and *Cody* for the proposition that reading the indictment did not, under the particular circumstances of those cases, suffice. And we do not read *Paradiso* as holding that reading the indictment will *always* suffice. Thus, regarding the requirement that the court determine the defendant's understanding of the nature of the charge, we perceive no inherent inconsistencies among our position, the position of *Paradiso*, and that of *Majko* and *Cody*. There is, however, an aspect of *Paradiso's* discussion of the factual basis requirement with which we do disagree. *See*, note 9, *infra*.

5. *See*, Berry v. United States, 435 F.2d 224 (7th Cir. 1970), holding that where a defendant was charged with unlawful importation of heroin and the court identified the charge and read a portion of the statute describing the presumptions on which the government would be able to rely at trial, the court's failure to explain the law of constructive possession did not violate Rule 11.

least set out the bare bones elements of the offense. At a minimum, a defendant should not be allowed to plead guilty to conspiracy under the statute here involved, 21 U.S.C. § 846, unless he understands that such a charge requires proof of an agreement between two or more persons to commit an offense under subchapter I of the Drug Abuse Prevention and Control Act, 21 U.S.C. § 801 *et seq.*; knowledge of the existence of a conspiracy; and an intent to participate in the unlawful enterprise. United States v. Falcone, 311 U.S. 205, 210, 61 S.Ct. 204, 85 L.Ed. 128 (1941); United States v. Rosner, 485 F.2d 1213, 1229 (2d Cir. 1973), cert. denied, 417 U.S. 950, 94 S.Ct. 3080, 41 L.Ed.2d 672 (1974); United States v. Agueci, 310 F.2d 817, 836 (2d (2d Cir.), cert. denied, 362 U.S. 974, 80 S.Ct. 1057, 1058, 1059, 4 L.Ed.2d 1009, 1010 (1960).[5a] Here, the district court's explanation did not meet this standard.[6]

We also note that at no time did Irizarry acknowledge that he understood the nature of the charge, nor can such understanding be inferred from any of his remarks. In United States v. Landry, 463 F.2d 253 (9th Cir. 1972), it was held that Rule 11 was not complied with where the record did not show, nor did the defendant acknowledge, that he understood the elements of the conspiracy offense to which he entered a guilty

plea. It would appear to be a minimal requirement of Rule 11 that the defendant's understanding of the nature of the charge be demonstrated on the record. Here, that requirement was not met.

In sum, the charge was never fully identified, the explanation of conspiracy was inadequate, and the record does not demonstrate that Irizarry understood the nature of the charge. Any one of these reasons would suffice as an independent basis for reversal. Taken together, they compel us to hold that the district court did not comply with Rule 11 in accepting Irizarry's plea of guilty. Accordingly, the judgment must be reversed, the plea set aside, and the case remanded so that Irizarry may be afforded the opportunity to plead anew. McCarthy v. United States, *supra.*

### III. FACTUAL BASIS FOR THE PLEA

Irizarry also contends that there was not a sufficient factual basis for the district court to accept the plea. At the hearing which culminated in the acceptance of the plea, the only facts established on the record which tend to provide a basis for the plea are those derived from Irizarry's own admissions. He admitted that he was told by Gonzalez (whom he did not identify by name) to go to a hotel room and pick up from

---

**5a.** The *Falcone* and *Rosner* cases identify as an additional element of conspiracy the commission of an overt act by one or more of the co-conspirators in furtherance of the unlawful purpose. While the government must allege and prove an overt act under the general conspiracy statute, 18 U.S.C. § 371, it has been held that there is no such requirement under the particular conspiracy statute here involved and its predecessors. Ewing v. United States, 386 F.2d 10 (9th Cir. 1967), cert. denied, 390 U.S. 991, 88 S.Ct. 1192, 19 L.Ed.2d 1299 (1968); Leyvas v. United States, 371 F.2d 714 (9th Cir. 1967); United States v. Garfoli, 324 F.2d 909 (7th Cir. 1963); United States v. DeViteri, 350 F.Supp. 550 (E.D.N.Y.1972); United States v. Gardner, 202 F.Supp. 256 (N.D.Cal.1962). *Cf.*, United States v. Galgano, 281 F.2d 908, 911 (2d Cir. 1960), cert. denied, 366 U.S. 967, 81 S.Ct. 1929, 6 L.Ed.2d 1257 (1961).

**6.** In the course of its opinion denying Irizarry's § 2255 motion, the district court, in discussing the claim that there had been no showing that Irizarry understood the nature of the charge, set forth the elements of conspiracy in somewhat greater detail than was done at the time of the plea, and then proceeded to show that Irizarry admitted committing acts which constituted the offense charged. The latter part of the discussion, while it bears on the question of whether there was a factual basis for the plea, is wholly irrelevant to the question of whether Irizarry *understood* the charge to which he was pleading guilty. And the former portion is inadequate not only because it ignores the fact that there was no discussion of what it was that Irizarry conspired to do, but also—more fundamentally—because a *post hoc* explanation of the charge cannot serve as a substitute for eliciting from the defendant personally his understanding of the nature of the charge *before* a plea of guilty is accepted.

Correa a package which he knew contained cocaine. It was implicit in these admissions that Irizarry was supposed to return the cocaine to Gonzalez. On the basis of these facts, the court accepted the plea. In its opinion denying Irizarry's § 2255 motion, however, the district court marshaled additional evidence in support of its conclusion that there had been a factual basis for the plea. Reference was made to statements made by Correa at the time he entered his plea of guilty to the same charge two weeks before Irizarry's plea, as well as to admissions made by Irizarry in affidavits made in support of pre-trial and post-conviction motions. Irizarry argues that such references to materials not made a part of the record at the time of the plea are improper. The government counters that the district court was not limited to the plea colloquy in determining whether there was a factual basis, but rather that it was free to refer to any information at its disposal.

■ It is undeniably true that the district court, in determining whether there was a factual basis for the plea, was free to rely on any facts at its disposal—not just the admissions of the defendant. The text of Rule 11 itself mentions "addressing the defendant personally" only in conjunction with the determination "that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea." There is no such reference with regard to the requirement that the court satisfy itself that there is a factual basis for the plea. That this distinction was intentional is made clear by the following excerpt from the Note of the Advisory Committee on Criminal Rules to the 1966 Amendment to Rule 11:

> The court should satisfy itself, by inquiry of the defendant or the attorney for the government, or by examining the presentence report, or otherwise, that the conduct which the defendant admits constitutes the offense charged . . . .

■ However, the fact that the court may refer to additional material does not answer Irizarry's objection that this material was not made a part of the record of the proceedings at which the plea was entered. Any additional facts on which the court relies in determining that there is a factual basis for the plea must be put into the record at the time of the plea.[7] *See*, Manley v. United States, 432 F.2d 1241 (2d Cir. 1970) (*en banc*). There, we had occasion to consider the effect on *McCarthy, supra*, of Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969), which held that *McCarthy* was not to be applied retroactively. We stated:

> With respect to pleas of guilty taken prior to April 2, 1969 [the effective date of *McCarthy*], we construe the holdings of *McCarthy* and *Halliday* not to require any further inquiry into whether the judge in accepting the plea of guilty had satisfied himself that there was a factual basis for the plea if it is apparent in the record of the case that there was a factual basis for the plea which was known to the judge who imposed sentence.

432 F.2d at 1244. As to post-*McCarthy* pleas, however, we construed the rule as follows:

> [The trial judge] must personally question the defendant at the time of pleading about the defendant's knowledge of the nature of the charge and the consequences of the plea. Further, he must demonstrate *on the record* that he has satisfied himself

---

7. The Rule refers to not entering a judgment, rather than not accepting a plea, unless there is a factual basis for the plea. On its face, this seems to imply that the determination of factual basis may be postponed until sentencing. However, to bifurcate the inquiry in this manner would be counterproductive and could lead to confusion. The Rule permits the court to review the facts at the time of sentencing, and to reject a previously accepted plea if the facts developed in the presentence report or elsewhere tend to cast doubt on the plea's factual basis. "But the incorporation of this 'escape-hatch' in the Rule does not relieve the judge of making the inquiries required at the time the plea is taken." 8 J. Moore, Federal Practice, ¶ 11.03 [4] at 11–67 (2d ed. 1974) (footnote omitted).

968

that there is a factual basis for the plea.

*Id.* (emphasis added). If there was any doubt after *Manley* that the court must read into the record any facts on which it relies, it was put to rest in Santobello v. New York, 404 U.S. 257, 261, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971):

> Fed.Rule Crim.Proc. 11, governing pleas in federal courts, now makes clear that the sentencing judge must develop, *on the record*, the factual basis for the plea, as, for example, by having the accused describe the conduct that gave rise to the charge.

(Footnote omitted; emphasis in original). *Post hoc* explanations, such as the one attempted in this case, are insufficient.[8]

■ Thus, whether or not there was a sufficient factual basis for the plea in this case must be determined solely on the basis of Irizarry's admissions at the time of the plea. Applying the test of United States v. Steele, 413 F.2d 967, 969 (2d Cir. 1969),[9] it appears to us that those admissions, if only barely, sketch out a sufficient factual basis.

We reverse this judgment of conviction not without regret. Irizarry was most likely guilty of something, and he most likely knew that he was guilty of something. Had Rule 11 been sufficiently complied with, this appeal would probably never have been taken. However, reversal is necessary to comply with the admonition in *McCarthy, supra,* 394 U.S. at 472, 89 S.Ct. at 1174, 22 L.Ed.2d 418.

It is . . . not too much to require that, before sentencing defendants to years of imprisonment, district judges take the few minutes necessary to inform them of their rights and to determine whether they understand the action they are taking.

Reversed and remanded.

---

8. We note as particularly inappropriate the reference to an affidavit filed *after* judgment had entered.

9. *Steele* was overruled in part by United States v. Manley, *supra,* note 2, 432 F.2d at 1245. But *Manley* in no way vitiated *Steele's* standard for determining whether there is a factual basis:

> [P]articularly where more than one defendant is charged, a sufficient statement of the acts and intent of the particular defendant, what the defendant did and intended, is necessary to an intelligent determination of whether there was a factual basis for the plea.

413 F.2d at 969.

We note that *Steele* was criticized in Paradiso v. United States, 482 F.2d 409, 415 & n. 4 (3d Cir. 1973). With respect to the requirement that the court satisfy itself that there is an adequate factual basis for the plea, the Third Circuit, citing *Steele* and also Majko v. United States, 457 F.2d 790 (7th Cir. 1972), and United States v. Cody, 438 F.2d 287 (8th Cir. 1971), stated:

> We decline to follow the precedents in several other courts that seem to indicate that a plea is invalid under rule 11 if the trial court does no more than read the indictment.

With deference, we suggest that the Third Circuit has misread what we wrote in *Steele.* We did not rule that reading the indictment and obtaining the defendant's admission that he committed the acts charged therein can *never* constitute an adequate factual basis. Nor do we think that such an absolute rule was necessary to the holdings of *Majko* and *Cody.* If in any particular case reading the indictment comports with the test laid down in *Steele,* then obviously *Steele* will be satisfied. *Steele* was concerned with ensuring compliance with the substance of Rule 11— not with legitimizing or outlawing any particular procedure.