**UNITED STATES of America, Appellee,**

v.

**Rafael NAVEDO, Appellant.**

**No. 116, Docket 74–1623.**

United States Court of Appeals, Second Circuit.

Argued Sept. 12, 1974.

Decided March 17, 1975.

E. Thomas Boyle, New York City (William J. Gallagher, The Legal Aid Society, New York City, on the brief), for appellant.

James P. Lavin, Asst. U.S. Atty., New York City (Paul J. Curran, U.S. Atty., and John D. Gordan III, Asst. U.S. Atty., New York City, on the brief), for appellee.

Before KAUFMAN, Chief Judge, and SMITH and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

Appellant Rafael Navedo appeals from a judgment of conviction entered upon a jury verdict returned in the Southern District of New York on March 19, 1974 after a two day jury trial before Charles L. Brieant, Jr., District Judge, finding Navedo guilty of conspiring to sell narcotics in violation of 21 U.S.C. § 846 (1970) (Count One); carrying a firearm during the commission of a felony in violation of 18 U.S.C. § 924(c)(2) (1970) (Count Two); and assaulting a federal officer in violation of 18 U.S.C. § 111 (1970) (Count Three).[1]

1. On April 30, 1974, Judge Brieant sentenced Navedo on his convictions in the instant case (Indictment 73 Cr. 964) to concurrent terms of imprisonment of 3 years, 5 years and 3 years on Counts One, Two and Three, respectively. A special parole term of 6 years following his release from prison also was imposed.

On the same day, Judge Brieant sentenced Navedo to a 4 year term of imprisonment on his plea of guilty to an entirely separate charge of conspiring to violate the federal nar-

Of the several claims of error raised on appeal, the only one that warrants discussion is the alleged abuse of discretion on the part of the trial judge in refusing to permit Navedo to plead guilty to the count charging a conspiracy to sell cocaine. For the reasons below, we hold on the facts of this case that there was no abuse of discretion. We affirm.

## I.

There was evidence at trial from which the jury could have found that the following occurred early in April 1973.[2]

On April 5, Navedo met in a Bronx apartment with an undercover agent who showed Navedo $3000. This was the price agreed upon for the agent's purchase of four ounces of cocaine from Navedo. The agent asked Navedo for the cocaine. Navedo left the apartment. He returned shortly with a man whom he introduced as Roy. At Navedo's direction, Roy took out of his pocket a plastic bag of white powder. He handed it to Navedo who gave it to the agent. Navedo requested the agent to test it. The agent opened the package, looked at the contents, closed the package and put it in his pocket.[3] The agent in the meanwhile had given the $3000 to Roy who counted it and handed it to Navedo.

On April 17, the agent called Navedo and discussed the possible purchase by the agent of twelve ounces of cocaine from Navedo. After some dickering as to price, Navedo agreed to accept $8,500 for the twelve ounces. They arranged to meet later that evening at a social club in the Bronx to complete the sale. Upon the agent's arrival at the club, he was let in by Navedo who introduced him to a woman, Migdalia Reyes.[4] At Navedo's direction, Reyes left the club, drove to another location where she obtained the substance Navedo had directed her to obtain and brought it back to the club in the proverbial brown paper bag. Shortly thereafter Navedo, having agreed with the agent to complete the sale at the same Bronx apartment where the April 5 sale had taken place, left the club with a man (later identified as Roy) who drove him in a pickup truck to the location of the apartment where the sale was to be completed. As Navedo and Roy started to get out of the truck, a police officer left his surveillance car and approached Navedo who jumped back into the truck. The officer, with his gun drawn, ran to the side of the truck and shouted "Stop, Police". As the truck started to move, the officer saw Navedo pointing a gun at him. The officer fired a shot from his service revolver. Navedo dropped his gun to the pavement.[5] Roy accelerated the truck and drove away with Navedo. The surveilling officers were unable to follow the truck immediately. The substance that Navedo was attempting to sell to the agent was never recovered.

Navedo was arrested later that day or the next. In an interview with an Assistant United States Attorney, after being advised of his rights, Navedo stated that he had sold what he believed to be cocaine to the agent on April 5 and had

cotics laws (Indictment 74 Cr. 360); this sentence was ordered to run concurrently with that imposed on the instant indictment.

Accordingly, Navedo received in the instant case an effective sentence of 1 year more than he received on his plea of guilty in 74 Cr. 360, and that is due to the 5 year sentence on the instant firearm count.

2. Navedo does not challenge the sufficiency of the evidence to support his convictions for conspiring to sell cocaine (Count One) or for carrying a firearm during the commission of a felony (Count Two).

3. A subsequent chemical analysis established that this white powder was not cocaine, but was procaine (a non-controlled substance) and lactose, both of which are cocaine dilutants.

4. Reyes later was indicted and charged as a co-defendant with Navedo in the conspiracy count in the instant case. She was acquitted by the jury.

5. The police retrieved Navedo's gun from the pavement. It was a .45 caliber revolver loaded with seven bullets, one in the chamber.

negotiated a further sale to the agent on April 17.

## II.

We turn directly to the claim that the trial judge abused his discretion in refusing to permit Navedo to plead guilty to the conspiracy count prior to trial.

After having pleaded not guilty to the three counts of the indictment before Judge Brieant on October 15, 1973, Navedo was presented before Judge Brieant for a change of plea to the conspiracy count on December 11, 1973.

Represented by counsel and with the consent of the government, he offered to plead guilty to Count One in satisfaction of the three count indictment. After conducting the usual inquiry regarding the voluntariness of the proposed plea, the judge then questioned Navedo directly, as required by Fed.R.Crim.P. 11, to determine whether there was a factual basis for the guilty plea.[6] Since Navedo's answers to the judge's questions raised doubts in the judge's mind as to whether the plea ought to be accepted, he reserved decision. He requested and

---

**6.** The following colloquy took place between Judge Brieant and Navedo during the Rule 11 inquiry on December 11:

"The Court: Is there anything you want to ask the Court about your rights or about the charge against you or about the consequences of pleading guilty?

The Defendant: No, it's okay.

The Court: Will you tell me what you did with respect to this conspiracy to distribute cocaine?

The Defendant: He hired me to take that cocaine, you know. He went with me. He paid me fifty dollars to go, you know, to go with him.

The Court: To where?

The Defendant: To—he introduced the guy, the agent, you know.

The Court: Did you carry cocaine to an agent?

The Defendant: No, Roy.

The Court: Did you carry cocaine to Roy?

The Defendant: I always go with him.

The Court: Did you deliver a package at 1581 Fulton Avenue on April 5, 1973?

The Defendant: It was Roy who took it and he paid Roy.

The Court: What did you have to do with the taking of it, if anything?

The Defendant: I went with him for the fifty dollars.

The Court: Did he tell you it was cocaine in the package?

The Defendant: Yes.

The Court: Did you believe it was cocaine in the package?

The Defendant: That's what he said.

The Court: What was your purpose in going along?

The Defendant: Well, for the fifty dollars. I wasn't working at that time, and I have five kids to support.

The Court: What were you supposed to do in order to become entitled to the fifty dollars?

The Defendant: He told me to accompany him to be with him.

The Court: For what purpose?

The Defendant: I don't know why. He just told me that, and that's what I did.

The Court: Are you in the habit of getting paid just to go with people? Did you have any function there?

The Defendant: I did it with him two times.

The Court: When was the other time?

The Defendant: The time he got away from the cops.

The Court: Was he delivering something then?

The Defendant: He was supposed to take something to someone.

The Court: What was the something he was supposed to take?

The Defendant: The same thing, you know, to the same agent.

The Court: All right. Did you do this knowing that you were assisting somebody in delivering cocaine?

The Defendant: When he spoke to me, I did go with him knowing that he was going to deliver the cocaine.

The Court: And you knew that was wrong?

The Defendant: Yes.

The Court: All right. It has been represented to me by the Government that the substance was believed by this defendant to be cocaine, and that he knowingly and wilfully assisted the other person, who I take it is Roy, in delivering this cocaine. Is that so?

The Defendant: Yes.

The Court: However, in truth and in fact, it apparently was not cocaine, but another substance known as procaine, which is not a Schedule 2 narcotic drug.

I consider that this presents a legal question which is not entirely clear, and accordingly, I expect to reserve decision as to whether the plea ought to be accepted or not."

obtained from the government a memorandum in support of the plea, together with copies of Navedo's pre-arraignment statements to the Assistant United States Attorney. After studying these papers, the judge on January 25, 1974 refused to accept the guilty plea on the ground that there was an insufficient factual basis to establish that Navedo had conspired with at least one other person who specifically had intended to engage in a narcotics conspiracy. The case proceeded to trial on March 18, 1974. On the following day, the jury convicted Navedo on three counts and acquitted Reyes on the conspiracy count.

■ Whatever may have been established by the evidence at trial and whatever inferences such evidence may support as a matter of hindsight, our inquiry on this appeal in determining whether the trial judge abused his discretion must focus upon what was before the judge *at the time he was asked to accept Navedo's guilty plea.* Fed.R. Crim.P. 11; McCarthy v. United States, 394 U.S. 459, 471 (1969); Irizarry v. United States, 508 F.2d 960, 962, 968 (2 Cir. 1974).[7]

■ We hold that, at the time Judge Brieant was asked to accept Na-

vedo's guilty plea, "the record did not show, nor did the defendant acknowledge, that he understood the elements of the conspiracy offense to which he [sought to enter] a guilty plea." *Irizarry, supra,* 508 F.2d at 966, citing United States v. Landry, 463 F.2d 253 (9 Cir. 1972). The chief deficiency in the factual basis stemmed from Navedo's persistence in minimizing his role in the transactions of both April 5 and April 17, the latter identified by Navedo as "[t]he time he [Roy] got away from the cops." Navedo repeatedly described Roy as the boss—the one who carried the cocaine, who introduced the agent and who received the money. Navedo insisted that he was merely an underling who accompanied Roy because he was paid $50 but did not know why he was told to accompany him.[8]

All else aside, Navedo's adamancy in minimizing his role and magnifying that of Roy in both transactions produced a record that raised grave doubts that there was a factual basis upon which the judge could find that Navedo had knowledge of the existence of a conspiracy or an intent to participate in the unlawful enterprise. That, among other gaps in the showing, was sufficient[9] to justify

---

7. In *Irizarry,* we reversed the denial of a § 2255 motion to vacate a judgment of conviction for conspiring to possess and distribute cocaine entered on the court's acceptance of a guilty plea. We held that the district court had failed to comply with Rule 11, inter alia, because its explanation of conspiracy was inadequate:

   "This limited explanation of conspiracy does not meet the requirement of *McCarthy* that the court determine the defendant's 'understanding of the essential elements of the crime charged.' 394 U.S. at 471. Conspiracy is a somewhat complicated crime, and, while the court need not explore every nook and cranny of conspiracy law before accepting a guilty plea, it must at least set out the bare-bones elements of the offense. At a minimum, a defendant should not be allowed to plead guilty to conspiracy under the statute here involved, 21 U.S.C. § 846, unless he understands that such a charge requires proof of an agreement between two or more persons to commit an offense under subchapter I of the Drug Abuse Pre-

vention and Control Act. 21 U.S.C. § 801 et seq.; knowledge of the existence of a conspiracy; and an intent to participate in the unlawful enterprise. . . . Here, the district court's explanation did not meet this standard." (footnotes omitted) 508 F.2d at 965–66.

8. The evidence at trial, as so often happens, established Navedo's involvement in the conspiracy to be quite different from that revealed to the court in the plea bargaining. Indeed, it showed that Navedo had lied to the judge on the Rule 11 voir dire. See pp. 295, 296, 297 *supra.*

9. There were other problems that understandably troubled Judge Brieant about the factual basis for the proffered plea. For example, the only completed sale was that of April 5 when the substance turned out to be procaine and lactose, rather than cocaine, even though Navedo thought it was cocaine; the substance involved in the attempted sale of April 17 was never identified, although again Nave-

Judge Brieant's good faith belief that in refusing to accept the plea he was complying with the command of Rule 11 that "[t]he court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea." [10]

In holding as we do, we do not say that rejection of a guilty plea under Rule 11 may never constitute an abuse of discretion. We recognize that the District of Columbia Circuit has so held in cases distinguishable on their facts from the instant case. United States v. Gaskin, 485 F.2d 1046 (D.C.Cir. 1973) (guilty plea rejected because defendant refused to admit that he committed the crime); Griffin v. United States, 405 F.2d 1378 (D.C.Cir. 1968) (guilty plea rejected because defendant's statements suggested possibility of self-defense). Whether we would reach the same conclusion on the same or similar facts, we leave to another day.

All we hold here is that on the facts of this case the district court did not abuse its discretion in refusing to accept the plea of guilty to the conspiracy count.

We have considered ·Navedo's other claims of error and find them without merit.

Affirmed.

do thought it was cocaine; there was no showing that Roy, the only other co-conspirator mentioned by Navedo, had knowledge that cocaine was involved in either or both transactions; and Navedo at no time mentioned Reyes, the only other co-conspirator named in the indictment.

10. The court, in determining whether there was a factual basis for the plea, "was free to rely on any facts at its disposal—not just the admissions of the defendant." Irizarry, supra, 508 F.2d at 967. Rule 11 itself contemplates independent inquiry by the court. Notes of the Advisory Committee on Criminal Rules to the 1966 Amendment to Rule 11 (specifically mentions inquiry of government attorney as a source); Davis v. United States, 470 F.2d 1128 (3 Cir. 1973). See also North Carolina v. Alford, 400 U.S. 25, 28 (1970). And here the court did request and obtain from the government written material, including a memorandum in support of the plea. The court also personally questioned Navedo as far as it considered appropriate in view of the possibility

IRVING R. KAUFMAN, Chief Judge (dissenting):

This case appears before us in a most unusual posture. In the ordinary appeal following a guilty plea the defendant seeks to set aside that plea, claiming that he is innocent, and that his plea was coerced. Navedo, however, admits his guilt and claims that his *trial* was coerced. He asserts that he was deprived of the shorter sentence usually attendant upon a plea by the district court's refusal to accept his admission of guilt. Because he will be required to serve at least an additional year in prison as a result, I believe a statement of my reasons for disagreeing with my brothers is in order.

As I understand the majority, they would uphold the rejection of Navedo's guilty plea simply because they believe that his statements at the allocution justified Judge Brieant's doubts as to the requisite factual basis.[1] It is clear, however, that a factual basis can be found in the very same evidence which led to Navedo's conviction after trial. The lower court's failure to find such grounds resulted not from anything which Navedo said, but rather from a misunderstanding of the responsibilities which Rule 11

that he might shortly have to stand trial before the same judge.

In our view, however, no amount of independent inquiry or further questioning of Navedo could have repaired the deficiency which Navedo himself established in the factual basis for the plea. See note 6, *supra.* He specifically disclaimed the requisite elements of *knowledge* of the existence of a conspiracy and an *intent* to participate in the unlawful enterprise. Indeed, he left considerable doubt as to the elements of an *agreement* between two persons to accomplish an unlawful purpose.

1. Judge Brieant rejected the plea because he believed it lacked a sufficient factual basis. The majority opinion, in discussing "the chief deficiency in the factual basis" presented to Judge Brieant, quotes language from Irizarry v. United States of America, 508 F.2d 960 (2d Cir. 1974), dealing with the defendant's *understanding* of the charge. It is undisputed here that Navedo understood the charge, and voluntarily proffered his plea.

imposes upon the district judge. Accordingly, I would reverse.

The record makes clear that the trial judge failed to find the requisite factual basis for the guilty plea because, as he candidly acknowledged, he focused exclusively on the April 5 transaction. Navedo had believed that the powder delivered on that day was cocaine. Because Navedo portrayed himself as Roy's underling in his responses to the Rule 11 queries, however, the court concluded that Roy may have known that the substance delivered was in fact procaine. Judge Brieant consequently refused to accept Navedo's plea, because he believed a sufficient showing had not been made that at least one other conspirator had the specific intent to sell narcotics.

In his colloquy with defense counsel after the verdict, however, Judge Brieant with commendable frankness conceded that he would have found a factual basis if he had considered the events surrounding the proposed sale on April 17:

> [O]n the 17th . . . the facts are such that the jury could have inferred . . . that he in truth did agree with Roy to deliver true cocaine . . and that he sent somebody for cocaine and that there was a brown paper bag which the jury could have inferred had cocaine in it, and that he committed the overt act of going there in the truck to complete the deal . . .

He also stated:

> . . . I must tell you that I never knew until the trial unfolded that there were two separate dates and that these discussions and this brown paper bag and all this other evidence we have been exposed to in the last two days was present in this case at

all . . . He wanted to plead to the first count. Perhaps in hindsight I should have let him, but I thought I was doing right at the time.

It is perplexing that the court was unaware of the second sale at the time it rejected the plea, since there were ample indications that the case involved two separate transactions. In its memorandum in support of the plea the Government plainly referred to a second proposed sale.[2] Moreover, both Navedo's post-arrest statement and the indictment referred to the April 17 transaction. The reason for the oversight, it is apparent, was the judge's misconception that Rule 11 requires the defendant alone to furnish the factual basis for the plea:

> I won't take a guilty plea unless the man himself gives me all the elements, and he didn't do so.

Because Navedo's allocution failed to delineate the second transaction precisely, the court confined its consideration to the events of April 5.

Rule 11, however, clearly contemplates independent inquiry by the court in satisfying itself that there exists a factual basis for the plea. Notes of the Advisory Committee on Criminal Rules to the 1966 Amendment to Rule 11 (specifically mentioning inquiry of government attorney as a source); Irizarry v. United States of America, *supra* n. 1, 508 F.2d at 963; Davis v. United States, 470 F.2d 1128 (3d Cir. 1973). Indeed, this case illustrates the danger of relying exclusively on information supplied by the defendant himself. A defendant may attempt to minimize his culpability during his allocution because he knows that the same judge will be imposing his sentence. A simple question directed to the Government—"What evidence would you

---

2. The Government's memorandum stated:

> We submit . . . that the court is not required nor should it engage in speculation as to the state of mind of other co-conspirators. *Furthermore Navedo told the court during his plea that there were further negotiations for the sale of additional cocaine subsequent to the delivery of the dummy package.* However, the arrests took place before that transaction could be consummated.
>
> Thus, *it is evident from these subsequent negotiations* and from Navedo's statements to the court that this was a conspiracy to sell cocaine even though the objects of the conspiracy were not attained . . . [Emphasis added.]

present at trial?"—would counteract the defendant's natural tendency to distort available evidence. In this case it would also have obviated the need for trial, and saved Navedo at least a year in the penitentiary.

Accordingly, I am of the view that Judge Brieant abused his discretion in rejecting Navedo's plea without good cause. United States v. Gaskins, 158 U.S.App.D.C. 267, 485 F.2d 1046 (1973); Griffin v. United States, 132 U.S.App. D.C. 108, 405 F.2d 1378 (1968). I certainly appreciate the difficulties which confront a trial judge who must decide whether to accept or to reject a plea of guilty. But that should not lead us to ignore the clear facts of this case. Not even the most cautious judge could entertain a suspicion that Navedo's plea was not intelligently and voluntarily offered. This is simply a case where a factual basis existed for the plea, but the trial judge failed to discover it because he did not fully grasp the facts and the applicable law. It is unfair and inappropriate to subject a defendant to additional incarceration for such reasons.

