Joseph SEILLER, Petitioner-Appellant,

v.

UNITED STATES of America,
Respondent-Appellee.

No. 804, Docket 75–2002.

United States Court of Appeals,
Second Circuit.

Argued March 27, 1975.
Decided Dec. 1, 1975.

Michael Young, New York City, for petitioner-appellant.

Thomas H. Sear, Asst. U. S. Atty., New York City (Paul J. Curran, U. S. Atty., and Lawrence S. Feld, Asst. U. S. Atty., New York City, on the brief), for respondent-appellee.

Before MULLIGAN and TIMBERS, Circuit Judges, and THOMSEN, District Judge.[*]

TIMBERS, Circuit Judge:

On this appeal from an order entered June 13, 1974 in the Southern District of New York, Irving Ben Cooper, *District Judge,* denying without a hearing a motion pursuant to 28 U.S.C. § 2255 (1970) to vacate a judgment of conviction and concurrent sentences following pleas of guilty to three counts of conspiring to transport stolen securities in foreign commerce, the essential issues are: (1) whether the guilty pleas were accepted in violation of Fed.R. Crim.P. 11;[1] and (2) whether sufficiently substantial issues were raised in the district court to have warranted an evidentiary hearing. For the reasons below, we emphatically affirm as to one conspiracy count but reluctantly remand for reconsideration of sentence on that count; and we reverse as to the other conspiracy counts and remand for repleading to those counts.

## I. FACTS AND PRIOR PROCEEDINGS

Joseph Seiller and others were indicted on June 23, 1971 in the Southern District of New York in two indictments which charged various offenses of transporting and conspiring to transport stolen securities, largely in foreign commerce.

One indictment (71 Cr. 675) charged Seiller and William Silverman with conspiring to transport stolen securities in foreign commerce in violation of 18 U.S.C. § 371 (1970) (Count One), and transporting a stolen $1,000,000 Treasury bill in violation of 18 U.S.C. § 2314 (1970) (Count Two); and it charged Seiller, Silverman, Robert Cohn, Michael Selvaggio and Stephen Salvaggio with a separate conspiracy to transport stolen securities in foreign commerce in violation of 18 U.S.C. § 371 (1970) (Count Three).

The second indictment (71 Cr. 676) charged Seiller, Gabriel Infanti and Nathan Kurtz with a third conspiracy to transport stolen securities in foreign commerce in violation of 18 U.S.C. § 371 (1970) (Count One), and transporting stolen securities in foreign commerce in violation of 18 U.S.C. §§ 2314 and 2 (Count Two).

On June 28, 1971, not guilty pleas were entered on behalf of Seiller to each of the five counts in both indictments.

On May 1, 1972, accompanied by his attorney, Seiller appeared before Judge Cooper. The attorney informed the Judge that Seiller wished to withdraw his pleas of not guilty and to plead guilty, with the government's consent, to the three conspiracy counts, i. e., to Counts One and Three of indictment 71 Cr. 675 and to Count One of indictment 71 Cr. 676.[2] As Seiller asserted that he was suffering from vertigo at the time, he was allowed to remain seated during the proceedings.

The court thereupon conducted a commendably detailed, comprehensive voir dire examination of Seiller to determine wheth-

---

[*] Hon. Roszel C. Thomsen, Senior United States District Judge, District of Maryland, sitting by designation.

1. Fed.R.Crim.P. 11, as applicable at the time the guilty pleas were accepted, provides:

"A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere.* The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty, or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

New Rule 11, as amended in 1974 and 1975, does not differ for purposes material here, and in any case was not effective at the time the guilty pleas were accepted.

2. The substantive counts subsequently were dismissed on motion of the government when Seiller was sentenced on March 21, 1973.

er to accept his pleas of guilty. The court ascertained, among other things, that Seiller was 47 years of age and had attended a university. The court emphasized to Seiller the specific consequences of his pleading guilty. The court requested that Seiller listen with care as the clerk read in full each of the three counts to which Seiller

wished to plead guilty. After each count was read, the clerk asked Seiller whether he understood the charge as read and how he wished to plead. Seiller responded unequivocally and without the slightest reservation as to each count that he did understand the charge and that he pleaded guilty.[3]

**3.** The following is the relevant portion of the transcript of the reading of each count, of Seiller's acknowledgment of his understanding of each count and of his plea of guilty to each count:

"The Court: It's on you that there will be the criminal fingerprint record and as a result of your plea you may go to jail, not your lawyer and not anyone else in the case.

So I want to be mighty sure you know what you are doing. I want you to listen with great care to the reading of the first indictment, that is 675.

Mr. Clerk, the lower number.

\*     \*     \*

The Clerk: Joseph Seiller, on June 23, 1971, 71 Cr. 675 was filed.

'Count 1. The grand jury charges:

1. On or about the first day of September, 1969, and continuously thereafter, up to and including the date of the filing of this indictment, in the Southern District of New York, Joseph Seiller and William Silverman, the defendants, unlawfully, willfully and knowingly combined, conspired, confederated and agreed together and with each other and with other persons to the grand jury known and unknown to violate Section 2314 of Title 18, United States Code.

2. It was part of said conspiracy that the said defendants would transport and cause to be transported in interstate and foreign commerce goods, wares, merchandise and securities of the value of $5,000 or more, knowing the same to have been stolen, converted and taken by fraud.

Overt acts. In furtherance of said conspiracy and to effect the objects thereof, the following overt acts, among others, were committed in the Southern District of New York.

1. On or about September 29, 1969, defendants Joseph Seiller and William Silverman met at 60 Wall Street, New York, New York.

2. On or about September 29, 1969, defendant Joseph Seiller sent a telex message to London, England.

3. On or about September 29, 1969, the defendant William Silverman traveled through and from the Southern District of New York to Kennedy International Airport, New York, New York.'

Mr. Seiller, do you understand the charge I read to you in Count 1.

The Defendant: Yes.

The Clerk: How do you now plead to Count 1?

The Defendant: Guilty.

The Clerk: Count 3.

'1. The grand jury further charges:

1. On or about the first day of December, 1970, and continuously thereafter up to and including the date of the filing of this indictment in the Southern District of New York, Joseph Seiller, William Silverman, Robert Cohn, Michael Selvaggio and Stephen Salvaggio, the defendants, unlawfully, willfully and knowingly, combined, conspired, confederated and agreed together and with each other and with other persons to the grand jury known and unknown to violate Section 2314 of Title 18 United States Code.

2. It was a part of said conspiracy that the said defendants would transport and cause to be transported in interstate and foreign commerce, goods, wares, merchandise and securities of a value of $5,000 or more, knowing the same to have been stolen, converted and taken by fraud.

Overt acts. In furtherance of said conspiracy and to effect the objects thereof, the following overt acts, among others, were committed in the Southern District of New York.

1. On or about December 30, 1970, the defendant Joseph Seiller made a telephone call.

2. On or about January 5, 1971, the defendant Joseph Seiller traveled to the vicinity of 237 Madison Avenue, New York, New York.

3. On or about February 7, 1971, defendant William Silverman traveled to the vicinity of 237 Madison Avenue, New York, New York.

4. On or about May 15, 1971, the defendant William Silverman traveled to the vicinity of the Tudor Hotel, 304 East 42nd Street, New York, New York.

5. On or about May 15, 1971, the defendants William Silverman, Robert Cohn, Michael Selvaggio and Stephen Salvaggio traveled to the vicinity of the Commodore Hotel, 304 East 42nd Street, New York, New York.

The court then asked Seiller whether he understood that each count constituted a separate crime; whether he understood the maximum terms of imprisonment and fines that could be imposed; and whether he understood that consecutive sentences on each of the three counts could be imposed, so that in effect he was facing a maximum prison sentence of 15 years and a maximum fine of $30,000 as a result of his guilty pleas. Seiller answered affirmatively, unequivocally and without the slightest reservation to each question.

The court further inquired whether Seiller had discussed all of the charges fully with his attorney; whether he had held anything back from his attorney; and whether he had understood everything his attorney had told him concerning his rights.[4] Although Seiller responded by in-

dicating full disclosure to his attorney and complete understanding of his rights, the court nevertheless explained to Seiller that he had a right to trial by a jury of 12; that at such trial the government would have the burden of proving him guilty beyond a reasonable doubt; that he could refuse to testify or to call witnesses; that the jury would be told that no unfavorable inferences could be drawn from such refusal to testify or to call witnesses; and that he could be convicted only by a unanimous vote of the jury. Seiller stated that he understood each of these rights which he was waiving by his guilty pleas.

The court then inquired whether Seiller was pleading guilty of his own free will. At first Seiller attempted to condition his pleas upon the understanding that he would not be deported. The court bluntly in-

6. On or about May 15, 1971, in the Commodore Hotel, the defendants Michael Selvaggio and Stephen Salvaggio carried luggage containing approximately $1,200,000 worth of bonds.'

Mr. Seiller, do you understand the charge I read to you in Count 3?

The Defendant: Yes.

The Clerk: How do you now plead to Count 3?

The Defendant: Guilty.

The Clerk: Now, your Honor, this is 71 Cr. 676.

The Court: Please read the conspiracy count of that indictment now to the defendant.

The Clerk: Yes, your Honor.

Mr. Seiller, on June 23, 1971, criminal indictment 71 Cr. 676 was filed.

'Count 1. The grand jury charges:

1. From on or about the first day of August, 1969, and continuously thereafter up to and including the date of the filing of this indictment in the Southern District of New York, Joseph Seiller, Gabriel Infanti and Nathan Kurtz, the defendants, unlawfully, willfully and knowingly combined, conspired, confederated and agreed together and with each other and with other persons to the grand jury known and unknown to violate Section 2314 of Title 18, United States Code.

2. It was a part of said conspiracy that said defendants would transport and cause to be transported in interstate and foreign commerce, goods, wares, merchandise and securities, of the value of $5,000 or more knowing the same to have been stolen, converted and taken by fraud.

Overt acts. In furtherance of said conspiracy and to effect the objects thereof, the

following overt acts, among others, were committed in the Southern District of New York.

1. On or about December 19, 1969, the defendant Joseph Seiller caused a letter to be sent to Weisbaden, Germany.

2. On or about December 24, 1969, the defendant Joseph Seiller caused a letter to be sent to Weisbaden, Germany.

3. On or about December 27, 1969, the defendant Joseph Seiller sent a telex message to Frankfurt, Germany.

4. On December 29, 1969, the defendant Joseph Seiller caused a letter to be sent to Weisbaden, Germany.'

Mr. Seiller, did you understand Count 1 that I just read to you?

The Defendant: Yes.

The Clerk: How do you now plead?

The Defendant: Guilty."

4. The following is the relevant portion of the transcript regarding Seiller's discussion of the charges with his attorney:

"The Court: Now, did you, in talking with your attorney, discuss everything pertaining to each one of these three charges in full? Did you?

The Defendant: Yes, sir.

The Court: Did you hold back anything from your attorney relating to these three charges?

The Defendant: No, I had no reason to.

The Court: Did you understand everything that your attorney said to you in regard to your rights in respect of each of these three charges?

The Defendant: Yes, sir."

formed him that no proviso could be added to his pleas. Seiller thereupon stated that he understood that he was "making a plea of guilty without any conditions of any kind." In response to the court's further inquiry, Seiller stated that in return for his guilty pleas no one had made any threat or promise, including no promise of a more lenient sentence.[5]

Finally, after questioning Seiller as to the factual basis for his pleas,[6] the court made

5. The following is the relevant portion of the transcript regarding the voluntariness of Seiller's pleas:

"The Court: Has anyone threatened you to get you to plead guilty?

The Defendant: No, sir.

The Court: Has anyone promised you anything of any kind if you would plead guilty?

The Defendant: No, sir.

The Court: Of course, by that I include a promise that if you plead guilty you will get a more lenient sentence. Has anybody said anything like that to you?

The Defendant: No, sir.

The Court: It is well recognized that judges, including this Judge, do take into consideration a plea of guilty unless there are extraordinary circumstances that do not warrant a judge doing that, but in the vast majority of instances it has been my practice to allow consideration to a defendant who comes in and says, 'This I did, this I admit, this I am not fooling around with and I am not asking for a trial in which to possibly extradict myself. I say I did this and I am not ducking it.'

That to me should operate in favor of a defendant. But I am making no promises because I do not know your history, which I will only learn in the time to follow this date from the Probation Department, which is going to make an investigation, and they don't start before there is a plea of guilty.

Do you understand that?

The Defendant: Yes, sir."

6. The following is the relevant portion of the transcript regarding the factual basis for Seiller's pleas:

"The Court: Is there anything else that occurs to you, Mr. McDermott [Assistant U.S. Attorney], or to counsel for the defense that I should ask this defendant before I close the proceeding?

Mr. McDermott: Yes, your Honor.

With respect to each of the conspiracies, to elicit a brief factual statement as to what the defendant did.

The Court: The defendant seems to be extremely intelligent and the language of the indictment was so basic and so simple that I thought I'd avoid that, but I will go into it nevertheless.

Mr. McDermott: Thank you.

The Court: Will you please tell me briefly what it is that you admit that you did in connection with each one of these three charges.

Now, the reason Mr. McDermott suggests that is that sometimes the defendant doesn't quite understand the language of the indictment and to be absolutely sure that the defendant knows what he's doing and what he's pled guilty to it is a good way to say, 'What are you pleading guilty to? Why? What did you do?'

The man says, 'I stole goods, I robbed a bank. I went in there and told them to give me the money or I'd blow up the bank.'

That is the way he tells what he did.

Now, will you please recite what you did with respect to [each] one of these three charges?

The Defendant: In each one of the three charges I introduced parties to each other which committed then the crime of which I am accused. That is how I got involved in the conspiracy.

The Court: You are not telling us. You are summing it up. What did you do that makes you guilty? What do you admit that you did? Did you, with knowledge, know that the goods that were being transported were obtained and so forth and so forth? Did you know that?

The Defendant: Not in all three situations.

The Court: Then I wish you would tell me. You had better go ahead. You are an intelligent person. What is it you are pleading guilty to?

The Defendant: To the conspiracy charge because I hold myself responsible that I introduced parties to each other which committed the crimes I am accused of.

The Court: But you knew that they were committing them?

The Defendant: Yes, I knew that.

The Court: And the crimes that they committed, what do you mean by that? They did what?

The Defendant: In one case they were trying to sell United States Treasury bills, in another case—

The Court: Knowing they were stolen?

The Defendant: Not known to me but later on found out it was stolen.

The Court: Yes?

The Defendant: And in the other case, partners of mine used me to find a buyer for stolen securities which I didn't know at that time if they were stolen but I was later on informed that they were stolen.

And the third time I introduced Mr. Silverman to Mr. Reeves, who is a witness, I think, for the purpose to make arrangements to sell—to purchase stolen securities.

the following finding in accepting his pleas of guilty:

"Let the record show that having listened to the defendant, I am content to state for the record that his alacrity of responses and his show of intelligence that he demonstrated was based not only on what he said, but also on his facial expressions and as a fact finder I am content that this defendant knows the full significance of what he is undertaking to do by taking a plea of guilty to each one of the three conspiracy charges, and accordingly, I direct the Clerk to enter a plea of guilty as to each conspiracy charge contained in 71 Cr. 675 and a plea of guilty to the conspiracy charge set forth in 71 Cr. 676."

Seiller's change of plea proceedings took place before Judge Cooper on May 1, 1972. Later that month, Count One of indictment 71 Cr. 676 (a conspiracy count to which Seiller had pleaded guilty) was dismissed at the close of the government's case during the trial of his co-defendants Infanti and Kurtz (they were both convicted on Count Two). The following month, his co-defendant Silverman was acquitted by a jury on Count Three of indictment 71 Cr. 675 (another conspiracy count to which Seiller had pleaded guilty); and in December 1972, all remaining charges in indictment 71 Cr. 675 were dismissed against Seiller's co-defendants Silverman, Cohn, Selvaggio and Salvaggio (including both conspiracy counts to which Seiller had pleaded guilty).[7]

Nettled by his fate as compared to that of his co-defendants, Seiller on January 12, 1973 moved to withdraw his pleas of guilty

pursuant to Fed.R.Crim.P. 32(d). In an affidavit in support of his motion, Seiller claimed to be innocent of the crimes to which he had pleaded guilty; he stated that his "plea of guilty was entered improvidently, while [he was] in a state of debilitating health, which rendered him unable to think properly, having to move on crutches or canes, because of his sickness keeping him in a state of unbalance"; and he inferred that he did not understand the nature of the charges against him when he pleaded guilty because of language difficulties:

"That apparently since I have a language barrier, being versed in the German language, and, although I understand some basic English, there is an area of exchange that has been difficult for me to understand. Consequently, he sought the advice of attorneys who are bilingual and understand German fluently and are capable of expressing the law more clearly to the said deponent, he has been made aware that his acts were not those of a guilty person, and should not have taken a plea of guilty."

Seiller further urged in support of his motion that the government had withdrawn indictment 71 Cr. 675 "as against all parties" and that "[i]n indictment No. 71 Cr. 676 the co-defendant therein was found not guilty because there was no conspiracy, therefore, I cannot be said to conspire with myself." Seiller also alleged that "there was no plea bargaining herein."

The government's opposing affidavit challenged Seiller's assertions as vague and conclusory; stated that there was no hint anywhere in the record that Seiller did not comprehend what he was doing when he

---

The Court: What do you say, Mr. McDermott?
Mr. McDermott: That fairly sums it up, your Honor.
The Court: Is the Government satisfied?
Mr. McDermott: Yes, your Honor."

7. On May 16, 1972, Infanti and Kurtz were found guilty by a jury on Count Two of indictment 71 Cr. 676. On August 15, 1972, Infanti and Kurtz were each given two year suspended sentences and were each fined $5,000. Count One was dismissed without opposition after the government had rested its case. On February

27, 1973, we affirmed Infanti's conviction, but reversed Kurtz' conviction for insufficient evidence. *United States v. Infanti*, 474 F.2d 522 (2 Cir. 1973). See 474 F.2d at 524 and 527 for some indication of the significant role of Seiller in this conspiracy.

On June 26, 1972, Silverman was acquitted by a jury on Count Three of indictment 71 Cr. 675. The remaining charges against Silverman, together with those against Selvaggio, Salvaggio and Cohn, were dismissed on December 15, 1972, upon the filing of a *nolle prosequi*.

entered his guilty pleas; and urged that Seiller's motion in truth was not based upon Seiller's ignorance or inability to understand the plea proceedings but upon his hope that the government would be unwilling or unable to prosecute him at that time.

In a memorandum opinion filed January 26, 1973, Judge Cooper denied Seiller's motion. Supplementing the remarks he had made at the close of the change of plea proceedings on May 1, 1972, Judge Cooper added:

> "The official court reporter's minutes clearly delineates the unequivocal understanding by movant of each and every step involved in, and the full scope of, the plea-taking procedure. What those same official court minutes do not reveal is the vocal impression imparted by interrogation and response to the words reflected therein and which gave positiveness to the entire proceedings then under way. The defendant at all times was impressively alert, unwavering, distinct and in full control while undertaking to respond to the questions propounded."

The judge stated that Seiller's papers were "quite bare of factual assertion"; found "that which is presented is unimpressive and unconvincing"; and concluded as follows:

> "We are compelled to brush aside as baseless and completely without factual support, the assortment of reasons defendant now advances in support of the relief he seeks. Typical of the reasons presented are two—that at the time of the plea he was in a state of debilitating health which rendered him unable to think properly and that a language barrier interfered with full comprehension of the total significance of the proceeding. As to the former, not the slightest indication was discernible of any limitation whatever in respect of his thinking

processes. And as to the latter, his answers, although tinged with teutonic inflection (he is a German national), flowed freely, he had no need to search for the proper word, and his pertinent responses pounced upon the questions to which they related. Indeed, defendant was in full command of the situation.

> *We suspect that the instant application was precipitated by the acquittal recently of one of defendant's co-conspirators.* In any event, on the merits the plea interposed to each of the three conspiracy counts by this defendant on May 1, 1972 must stand and his instant motion is denied in all respects." (emphasis added).

On March 21, 1973, Seiller was sentenced to concurrent three year terms of imprisonment on each of the three conspiracy counts to which he had pleaded guilty. The sentence was ordered to run consecutively to a New York State sentence which Seiller was then serving.[8] By letter dated April 30, 1973, Seiller asked for reconsideration of his sentence as unduly harsh. Judge Cooper treated this letter as a motion to reduce sentence pursuant to Fed.R.Crim.P. 35 and denied it by an order entered June 15, 1973.

On April 9, 1974, Seiller filed the instant motion to vacate his judgment of conviction and sentence[9] pursuant to 28 U.S.C. § 2255 (1970). In an affidavit in support of the motion, Seiller repeated his protestations of innocence and his previous claims concerning his lack of understanding of English and his poor health at the time of his pleas. Contrary to his earlier assertion that there had been no plea bargaining, he alleged that the United States Attorney's Office had suggested that he "take a 'guilty' plea on conspiracy only" and had told him that "the court would be made aware of [his] cooperation and that [he] could expect leniency." Seiller further alleged that his

---

8. On January 11, 1975, Seiller completed serving his New York sentence and was remanded to federal authorities to commence serving his federal sentence.

9. The government did not challenge the propriety of the § 2255 motion on the ground of Seiller's failure to appeal directly from his

judgment of conviction. Seiller claimed that no appeal was taken because his counsel informed him that there could be no appeal from pleas of guilty. Since this issue was not raised below or on appeal, we express no opinion thereon.

then attorney, James J. Cally, Esq., had advised him to plead guilty because of his ill health and had told him that the most he could expect would be a suspended sentence.

Maurice M. McDermott, Esq., the Assistant United States Attorney in charge of the case at the time Seiller pleaded guilty, in an affidavit in opposition to Seiller's motion denied Seiller's allegations with respect to representations by the government that he could expect leniency and that the sentencing court would be made aware of Seiller's cooperation. Mr. McDermott stated that he had met with Seiller to discuss his possible cooperation with the government in the prosecution of Kurtz and Infanti. He further stated that the most he would have told Seiller in accordance with his standard practice was that, if Seiller cooperated fully and testified truthfully and candidly, this would be made known to the sentencing judge. Seiller was not called as a witness at the trial of Kurtz and Infanti because Mr. McDermott had concluded after his discussions with Seiller that he would not be a credible witness since he was evasive and consistently attempted to minimize his own criminal involvement in the conspiracies. Seiller's former attorney, Mr. Cally, categorically denied in an affidavit that he ever had told Seiller that he could expect a suspended sentence.

In a reply affidavit Seiller admitted that the portion of the McDermott affidavit on the matter of leniency was accurate. Seiller alleged, however, that Mr. McDermott had told him that the court would be informed about his willingness to cooperate and that he also had told him that leniency could be expected. Seiller asserted that the reason he had not been called as a witness was because he knew too little to be of value to the prosecution. Seiller also admitted the accuracy of the Cally affidavit. He alleged, however, that Mr. Cally had told Seiller's wife in Seiller's presence that he thought Seiller could expect a suspended sentence.

In a memorandum opinion filed June 13, 1974, Judge Cooper denied Seiller's § 2255 motion in all respects. After noting that most of Seiller's allegations had been disposed of as baseless and completely without factual support in his earlier opinion denying Seiller's Rule 32(d) motion, Judge Cooper stated:

"In the motion before us now, petitioner alleges certain new grounds: that he was told he could expect leniency from the Court in return for his cooperation with the Government, and that his attorney told him that the most he could expect at sentence would be a suspended sentence.

These new grounds are forcefully denied in affidavits submitted by the Government and petitioner's attorney. Petitioner's reply thereto is without substance—words that are hollow and consequently unpersuasive."

The judge concluded that Seiller's papers clearly were insufficient to warrant a hearing.

The instant appeal was taken by Seiller from Judge Cooper's order of June 13, 1974 denying his § 2255 motion.

## II. SEILLER'S UNDERSTANDING OF NATURE OF CHARGES

Rule 11 requires to the extent here relevant that, before a plea of guilty may be accepted, the court must establish by personally questioning the defendant that he understands the nature of the charge. *McCarthy v. United States,* 394 U.S. 459, 464–67 (1969).

Seiller contends that the extent of Judge Cooper's compliance with this requirement was that the three conspiracy counts were read to him and that he was asked how he pleaded to each. He argues that we held in *Irizarry v. United States,* 508 F.2d 960 (2 Cir. 1975), that reading the indictment to a defendant does not satisfy *McCarthy;* that *Irizarry* requires that the court establish that a defendant understands the elements of the crime charged, particularly where the crime is a complex one such as conspiracy; and that here the court did not do so. Instead, so the argument goes, the court considered it unnecessary to explain the

elements of knowledge and intent to Seiller, relying instead on the language of the indictment and the court's favorable impression of Seiller's intelligence.

At first blush, Seiller's argument has a certain surface appeal. Upon analysis, however, it does not stand up—as to either his reading of *Irizarry* or his application of that case to the facts of the instant case.

Turning first to *Irizarry,* in reversing the denial of a § 2255 motion to vacate a judgment of conviction for conspiring to possess and distribute cocaine entered upon the court's acceptance of a plea of guilty, we held that the court had failed to establish the defendant's understanding of the nature of the charge. Our conclusion that Rule 11 had not been complied with was based on: (1) the court's failure to spell out the charge beyond identifying it as conspiracy; (2) the court's inadequate explanation of the nature of conspiracy; and (3) the total dearth of anything in the record to indicate that Irizarry understood the nature of the offense with which he was charged. 508 F.2d at 964.

■ Contrary to Seiller's interpretation of *Irizarry,* we did *not* hold that reading of the indictment may *never* satisfy the requirement that a defendant's understanding of the charge be determined. Our opinion made clear that whether reading the indictment would constitute an adequate determination of a defendant's understanding would depend on the particular circumstances of the case. 508 F.2d at 965 n. 4 and 968 n. 9. See also *Rizzo v. United States,* 516 F.2d 789, 794 (2 Cir. 1975).

The instant case is a far cry from *Irizarry.* Here, each count to which Seiller sought to enter a plea of guilty was read to him verbatim. Each of the three counts charged that Seiller and his specified co-defendants during a specified period of time had "unlawfully, willfully and knowingly combined, conspired, confederated and agreed" to violate the substantive provisions of 18 U.S.C. § 2314 (1970); that as part of the conspiracy Seiller and his specified co-defendants would transport or cause

to be transported in foreign commerce securities of a value of $5,000 or more, "knowing the same to have been stolen, converted and taken by fraud"; and that certain specified overt acts—13 in all—were committed in furtherance of the respective conspiracies. Unlike *Irizarry,* the reading of these specific, detailed counts plainly spelled out to Seiller the requisite elements of the crimes with which he was charged; this was done not once, but three times. Unlike *Irizarry,* Seiller acknowledged three times that he understood the respective charges. See note 3, *supra.* Unlike *Irizarry,* Judge Cooper established that Seiller had fully discussed each of the three charges with his attorney, that he had not held anything back from his attorney relating to the three charges, and that he understood everything his attorney had told him regarding his rights with respect to each of the three charges. See note 4, *supra.* Moreover, the court carefully explained to Seiller in considerable detail the rights he would be waiving by his pleading guilty, all of which Seiller acknowledged he understood.

■ We hold that the district court here was amply justified in relying on the reading of the indictment, coupled with Seiller's discussions with his attorney, his age (47), his university education, his representation by counsel, his "alacrity of responses and his show of intelligence"—in short, the court's total impression of the defendant and his understanding of the proceedings—to establish that Seiller understood the nature of the charges. *Irizarry v. United States, supra,* 508 F.2d at 964 n. 3; *Paradiso v. United States,* 482 F.2d 409, 414 (3 Cir. 1973); *Eagle Thunder v. United States,* 477 F.2d 1326, 1328 (8 Cir.), *cert. denied,* 414 U.S. 873 (1973).

### III.  FACTUAL BASIS FOR SEILLER'S PLEA

■ Rule 11 requires not only that a defendant's understanding of the nature of the charge be established before a plea of guilty may be accepted, but also that the court must satisfy itself that there is a factual basis for the plea. *McCarthy v.*

*United States, supra,* 394 U.S. at 467. Moreover, this factual basis must be sufficiently established by the record, rather than by assumptions of fact made by the trial judge which may be open to dispute. *Santobello v. New York,* 404 U.S. 257, 261 (1971); *Irizarry v. United States, supra,* 508 F.2d at 967–68.

Seiller claims that the colloquy between Judge Cooper and himself on the factual basis for his pleas, see note 6, *supra,* was insufficient to establish the requisite factual basis for any of the three counts to which he pleaded guilty. He now seeks to interpret his answers to Judge Cooper's questions as showing that the only act he performed in connection with each conspiracy was the introduction of the parties who later transported stolen securities. Merely introducing the parties, Seiller argues, could not make him a participant in the conspiracy unless he knew of the unlawful purpose of the conspiracy and intended to further its unlawful purpose at the time he introduced the parties. With respect to two of the conspiracies (Count One of each of indictments 71 Cr. 675 and 71 Cr. 676), Seiller contends that his responses indicate that he denied any knowledge of the unlawful purpose of the conspiracies or any intent to further that purpose when he introduced the other conspirators.[10] With respect to the third conspiracy (Count Three of indictment 71 Cr. 675), Seiller contends that the record at best is ambiguous as to his knowledge and intent.[11]

■■■ I would hold that Seiller's responses to the reading of each count of the indictments, together with his responses to Judge Cooper's questions, provide a sufficient factual basis for accepting Seiller's guilty pleas to each of the three counts.[12]

10. The following is the portion of the transcript relied upon by Seiller (set forth more fully in note 6, *supra* ):

"The Court: And the crimes that they committed, what do you mean by that? They did what?

The Defendant: In one case they were trying to sell United States Treasury bills, in another case—

The Court: Knowing they were stolen?

The Defendant: Not known to me but later on found out it was stolen.

The Court: Yes?

The Defendant: And in the other case, partners of mine used me to find a buyer for stolen securities which I didn't know at the time if they were stolen but I was later on informed that they were stolen."

11. Seiller points to the following portion of the transcript, set forth more fully in note 6, *supra* :

"[The Defendant]: And the third time I introduced Mr. Silverman to Mr. Reeves, who is a witness, I think, for the purpose to make arrangements to sell—to purchase stolen securities."

12. All three members of this panel agree that there was a sufficient factual basis for accepting Seiller's guilty plea to Count Three of indictment 71 Cr. 675. We therefore affirm the district court's refusal to vacate the judgment of conviction on that count.

With respect to Count One of indictment 71 Cr. 675 and Count One of indictment 71 Cr. 676, for the reasons set forth in Judge Mulligan's opinion, pages 569–571, *infra,* my colleagues believe that a sufficient factual basis was not established by the record for accepting Seiller's guilty pleas to those counts. The order of the district court therefore is reversed as to those counts and the case is remanded to give Seiller an opportunity to replead to those two counts.

Since concurrent three year terms of imprisonment were imposed on each of the three conspiracy counts to which Seiller pleaded guilty, the case also is remanded for reconsideration of the sentence on Count Three of indictment 71 Cr. 675. See *United States v. Sperling,* 506 F.2d 1323, 1343 (2 Cir. 1974), *cert. denied,* 420 U.S. 962 (1975). See also *United States v. Rivera,* 521 F.2d 125, 129 (2 Cir. 1975); *United States v. Rizzo,* 491 F.2d 1235, 1236 (2 Cir. 1974); *United States v. De-Marco,* 488 F.2d 828, 833 (2 Cir. 1973); *United States v. Mancuso,* 485 F.2d 275, 283 (2 Cir. 1973); *United States v. Mapp,* 476 F.2d 67, 83 (2 Cir. 1973); *United States v. Hines,* 256 F.2d 561, 564 (2 Cir. 1958). Cf. *United States v. Febre,* 425 F.2d 107, 113 (2 Cir.), *cert. denied,* 400 U.S. 849 (1970). In remanding for reconsideration of the sentence on Count Three, we intimate no view as to the propriety of changing the sentence on that count. See *United States v. Sperling, supra,* 506 F.2d at 1343.

In view of Judge Mulligan's citation of *McGee v. United States,* 462 F.2d 243, 247 (2 Cir. 1972), in connection with the remand for reconsideration of sentence on Count Three, I am constrained to state, as I did in my dissenting opinion in *McGee,* that, "To some trial judges, such [remand] might be taken as a nudge to reduce sentence. I do not believe that [the district judge in the instant case] is one to

As stated above, the reading of the offenses charged in the indictment, coupled with a defendant's admission that he committed the offenses charged, may provide a sufficient factual basis for a guilty plea where the charge is straightforward and the elements of the crime are clearly set out. *Irizarry v. United States, supra,* 508 F.2d at 968 n. 9; *Rizzo v. United States, supra,* 516 F.2d at 794. Here, however, in my view there is no need to affirm solely on that ground.

At the government's request, Judge Cooper pursued further his inquiry into the basis for the pleas, even though he believed that the reading of the indictments was sufficient in light of Seiller's intelligence and the clear, detailed language of the indictments.

Seiller told Judge Cooper that he was pleading guilty "[t]o the conspiracy charge because I hold myself responsible that I introduced parties to each other which committed the crime I am accused of." Judge Cooper then asked, "But you knew that they *were committing* them?" (emphasis added). To this Seiller responded, "Yes, I knew that."

With respect to the third conspiracy (Count Three of indictment 71 Cr. 675), Seiller unequivocally stated, " . . . I introduced Mr. Silverman to Mr. Reeves . . . for the purpose to make arrangements to sell—to purchase stolen securities." Contrary to Seiller's present contentions, it would be difficult to articulate a less ambiguous or more inculpatory admission of guilty knowledge and intent to commit the crime charged.

With respect to the conspiracy charged in Count One of indictment 71 Cr. 676, it is significant that there were read to Seiller, and he admitted, the overt acts alleged in furtherance of the conspiracy charged— particularly the allegation that he had sent a highly incriminating telex to one of his co-conspirators in Frankfurt, Germany, on September 27, 1969, as well as another incriminating letter to Wiesbaden, Germany, on September 29, 1969.[13] Since the incrimi-

be easily nudged." See opinion of Judge Murphy in *McGee* on remand, 344 F.Supp. 442 (S.D.N.Y.1972), especially the last sentence of his opinion. *Id.* at 445, *aff'd,* 465 F.2d 357 (2 Cir. 1972).

**13.** The September 27 telex and the September 29 letter were described by Judge Oakes in *United States v. Infanti,* 474 F.2d 522 (2 Cir. 1973), which affirmed the conviction of Infanti and reversed that of Kurtz on the substantive charge of transporting stolen securities in foreign commerce:

"A Telex message was sent by co-defendant Joseph Seiller to a Max Sperber, informing him of the arrival on the 29th in Frankfurt at 8:15 a. m. of 'Mr. Gabriel Infanti' on the specific TWA flight. The Telex went on to state that Infanti 'has been instructed to expect to be picked up at the airport by you'; that he would bring with him the four certificates, 'endorsed in blank according to law,' along with a 'corporate resolution showing that the president of the owner's corporation is authorized to sign these certificates'; that Infanti was supposed to receive $825,000 (U.S.) or '40 per cent of Monday market quotation whichever is higher in cash or bankers draft and fly back.' The Telex was sent under the cable address ORFI–COEAST, an acronym for Organization for International Finance and Commerce or Orfico International, Inc., a firm of which Seiller was presi-

dent and the letterhead of which contained a Grand Central Station post office box and a Manhattan telephone number. The cable went on to give instructions on how the proceeds of the sale of blue chip stocks at a 60 percent discount were to be divided and also warned Sperber not to disclose too much information to Infanti so as 'to avoid that [sic] he can walk into some office in [Frankfurt] and make a deal without our knowledge.'" *Id.* at 524.

\* \* \*

"One of the defendant's own exhibits, a letter from Seiller of ORFICO to one Scholz in Wiesbaden written on September 29 said in part, 'Today you should be busy with the clients of our member being in Frankfurt to sell their shares and you should be able to collect the various amounts of money which we have given instructions to Mr. Sperber to pay.'" *Id.* at 525.

Further references to co-defendant Seiller in our *Infanti* opinion are noted—not to supplement the record before Judge Cooper, but to indicate the extent of Seiller's involvement:

"The jury may be taken to have inferred that Infanti, acting as Seiller's agent, was to transfer $2 million in certificates of two major listed companies and receive in return less than 40 per cent of their value." *Id.* at 525.

\* \* \*

nating character particularly of the telex was beyond dispute and since Seiller pled guilty to a charge specifically alleging his authorship of the telex, it would have been superfluous for Judge Cooper to have read the contents into the record.[14]

As to this same count, Seiller did state that his partners used him "to find a buyer for stolen securities which I didn't know at that time whether they were stolen but I was later on informed that they were stolen." Judge Cooper had ample justification for interpreting this to mean that Seiller learned that the securities were stolen sometime after he was asked to find a buyer but *before* termination of his participation in the transportation of the securities.[15] As stated above, Seiller fully understood the charges against him, including the requirements of knowledge and intent. Judge Cooper's line of questioning was such as to make it abundantly clear to Seiller that the court was attempting to determine whether Seiller knew the securities were stolen before his participation terminated. In this context, and especially with an attorney at his side, Seiller's voluntary admission—"but I was later on informed that

they were stolen"—justifiably was taken as an admission that he was informed while he was still participating in the conspiracy.

In short, with respect to Count One of indictment 71 Cr. 676, I would find a sufficient factual basis for the plea in: (1) Seiller's admission of guilt to the charge which alleged specifically that he had sent the September 27 telex and the September 29 letter; and (2) Seiller's initial, unequivocal admission that he knew his co-conspirators "were committing" crimes.

Upon similar reasoning, I would find a sufficient factual basis for the plea to Count One of indictment 71 Cr. 675. When asked about his knowledge that the Treasury bills had been stolen, Seiller responded, "Not known to me but later on found out it was stolen." Again, this response must be considered in light of Seiller's admission of guilt to the straightforward charge which alleged specific overt acts committed by him. This response also must be considered in light of Seiller's unequivocal admission during the earlier colloquy that he knew the others "were committing" the crimes—crimes which were taking place while he was still participating in the conspiracy.[16]

"We may infer, however, that Seiller's office was in Manhattan from his letterhead containing a Grand Central Station box number and a Manhattan telephone number, and that the certificates were at some time in his possession there, since Seiller made the arrangements under which the securities were to be delivered. Furthermore, Seiller described the securities in a letter to Scholz on September 24 as being 'on hand', additional evidence for the inference they were at one time located in his Manhattan office." *Id.* at 527.

14. While the facts upon which the plea is based must appear in the record, this record requirement does not necessitate what obviously is unnecessary, i.e. that a document such as the telex which is unambiguously referred to in the crucial admission should itself be put in the record. The situation would be different of course if the substance of the telex were in dispute.

15. This would assume that if Seiller had not known that the securities were stolen until after his role in their transportation was complete, he could not have been considered a co-conspirator.

16. In this connection it should be noted that Seiller's argument that his responses to the court's questions regarding each of the first counts of indictments 71 Cr. 675 and 71 Cr. 676 indicate that he did not have knowledge that the securities were stolen when he made the introductions ignores his earlier admission that he knew the parties were committing the crimes when he introduced them. The relevant portion of the transcript reads:

"The Defendant: . . . I hold myself responsible that I introduced parties to each other which committed the crimes I am accused of.

The Court: But you knew that they were committing them?

The Defendant: Yes, I knew that."

Even accepting Seiller's argument, however, it does not follow that his presently asserted claim of lack of knowledge exonerates him of the crime of conspiracy. Both of these counts charged conspiracies continuing up to the date of the filing of the indictments. After hearing them read in full, he pleaded guilty to each. Seiller points to nothing in the record of the plea proceedings which indicates that his knowledge that crimes were being committed was not obtained during the life of the conspiracy, *United States v. Badalamente*, 507 F.2d 12,

For these reasons, I would hold that the record of the change of plea proceedings, read as a whole and in context, established an adequate factual basis for Seiller's pleas of guilty to each of the three conspiracy counts.[17]

## IV. NO NECESSITY FOR HEARING

Finally, Seiller urges, even if the record of the change of plea proceedings does not establish that the district court failed to comply with Rule 11 in accepting Seiller's pleas of guilty, that we should remand the case for a hearing on his various allegations of innocence, leniency, promises, ill health and language difficulties at the time of his change of pleas. We disagree.

▆▆ Seiller's argument that his protestations of innocence, coupled with his present version of the facts, necessitate a hearing ignores the limited purpose of the § 2255 proceeding which he initiated. Where the invalidity of a plea of guilty is asserted in a § 2255 proceeding, the court's duty is to examine the record of the plea proceedings to determine if the judge who accepted the plea of guilty complied with

Rule 11, i. e. whether *that record* demonstrates that the defendant's plea was made voluntarily with an understanding of the nature of the charge and that there was a factual basis for the plea. If a court were required in a § 2255 proceeding to explore a defendant's new version of the facts, the proceeding would amount to little less than the trial which the defendant waived by pleading guilty. The court's inquiry in a § 2255 proceeding properly is limited to what was before the judge at the time he was asked to accept the guilty plea. *United States v. Navedo,* 516 F.2d 293, 297 (2 Cir. 1975).

▆▆ The foregoing applies to Seiller's claims of innocence based on his presently asserted new version of the facts. It does not apply to his allegations of promises of leniency, ill health and language difficulties. As to the latter, Seiller assumes that his mere allegations entitled him to a hearing. We disagree. No hearing was required unless evidentiary facts were alleged in such detail as to have raised sufficiently substantial issues to warrant a hearing. *Michel v. United States,* 507 F.2d 461, 464

20 (2 Cir. 1974), *cert. denied,* 421 U.S. 911 (1975), and before he withdrew from the conspiracy by an affirmative act, if he ever did so. *United States v. Borelli,* 336 F.2d 376, 388 (2 Cir. 1964), *cert. denied,* 379 U.S. 960 (1965). In *Badalamente,* we held in relevant part that:
> " . . . Badalamente was prosecuted for a conspiracy, and the continuing character of the conspiracy offense obviates the need to have the guilty knowledge contemporaneously with some other event so long as that knowledge is obtained during the life of the conspiracy." 507 F.2d at 20.

In view of the independent grounds stated above for finding a factual basis for the pleas, it is not necessary to rely on this alternative ground. I would hold simply that Seiller's responses to the court's questions, coupled with the reading of the indictment, provided an adequate factual basis for his pleas of guilty to each of the first counts of indictments 71 Cr. 675 and 71 Cr. 676.

17. Seiller also contends that his responses to the court's questions provide "irrefutable evidence" that he did not understand that knowledge of the unlawful purpose of the conspiracy and intent to further that purpose were requisite elements of the crimes of conspiracy to which he pleaded guilty. In other words, Seil-

ler argues that he pleaded guilty because he thought he was criminally liable for merely introducing people who eventually committed the crimes. I disagree.

This argument might be plausible if the change of plea proceedings consisted solely of Seiller's responses to the court's questions as to the factual basis for his change of pleas. But that is not the case here. Seiller's responses must be viewed in the context of the proceedings as a whole. As we have pointed out, pp. 557–558, 563, *supra,* those proceedings included the reading in full of the relatively simple charges, Seiller's admissions that he understood the charges, and his separate pleas of guilty to each charge. Moreover, Seiller admitted that he had discussed the charges and his rights fully with his attorney. Finally, there is an on-the-record statement by Judge Cooper that he was convinced at the time of the change of pleas by his observation of Seiller during the proceedings that the latter knew "the full significance of what he is undertaking to do by taking a plea of guilty to each one of the three conspiracy charges. . ﹒. ."

On the record of the change of plea proceedings as a whole, I am satisfied that Seiller fully understood the nature of the crimes to which he pleaded guilty.

(2 Cir. 1974). Mere conclusory assertions do not entitle a petitioner to a hearing. *Dalli v. United States,* 491 F.2d 758, 760 (2 Cir. 1974).

■■■ With respect to Seiller's assertions that his ill health and language difficulties prevented him from comprehending the change of plea proceedings, we find his affidavits to be devoid of any evidentiary support for such assertions. They rest solely on Seiller's conclusory statements. Despite his claim that he was under the care of a neurologist and psychiatrist at the time of his change of pleas, it is significant that Seiller failed to submit any affidavit or certificate whatsoever from those persons as to his mental condition at the time of his change of pleas. We hold that the district court was fully justified, when it rejected Seiller's original Rule 32(d) motion and his subsequent § 2255 petition, to have relied on its own observation as stated on the record of the change of plea proceedings regarding Seiller's condition at that time. See pages 558–559 and 560–561, *supra.* Clearly, within the meaning of § 2255, Seiller was entitled to no relief on those claims.

■■■ Nor was Seiller's claim that he had been promised leniency by the prosecutor sufficient to warrant a hearing. First, the claim as stated was evasive. Seiller's affidavit in support of his § 2255 petition alleged that he had been told that he could expect leniency for his *cooperation.* When the prosecutor specifically denied that Seiller had cooperated with the government, Seiller withdrew to a position that he had been promised leniency for his *willingness* to cooperate. Second, the claim was asserted only belatedly. Seiller did not mention it in his affidavit in support of his Rule 32(d) motion, which in fact stated that there had been no plea bargaining. It is reasonable to assume that if there had been such a promise it would have been called to the judge's attention at the time of sentencing when the government failed to mention it, or in Seiller's letter to the judge requesting reconsideration of his sentence. Finally, of chief importance, Seiller's claim is squarely contradicted by his own statement at the change of plea proceedings that no one had promised him anything of any kind to plead guilty, including a promise of a more lenient sentence. See note 5, *supra.* On this record, we agree with the district court that Seiller's claims are "hollow" and "unpersuasive". See, p. 562, *supra.* They were properly rejected without a hearing. See *Dalli v. United States, supra,* 491 F.2d at 762.[18]

■■■ Finally, Seiller's claim that his change of pleas was induced by his attorney's statement that he thought Seiller could expect a suspended sentence did not entitle him to a hearing. Even assuming such statement were true, it would not constitute grounds for vacating the pleas. A mistaken estimate by defense counsel of the sentence Seiller could expect to receive would not vitiate his pleas of guilty. *United States ex rel. Hill v. Ternullo,* 510 F.2d 844, 847 (2 Cir. 1975); *United States ex rel. Scott v. Mancusi,* 429 F.2d 104, 108 (2 Cir. 1970), *cert. denied,* 402 U.S. 909 (1971).

The order of the district court which denied Seiller's motion to vacate the judgment of conviction on Count Three of indictment 71 Cr. 675 is affirmed. With respect to Count One of indictment 71 Cr. 675 and Count One of indictment 71 Cr. 676, the order of the district court is reversed and the case as to those two counts is remanded to give Seiller an opportunity to replead. The case also is remanded for reconsideration of the sentence on Count Three of indictment 71 Cr. 675.

Affirmed in part; reversed and remanded in part.

---

18. Although the government did not oppose an evidentiary hearing on Seiller's claim of promised leniency, that did not divest the district court of its discretion to determine whether the claim was sufficiently substantial to warrant granting a hearing. *Williams v. United States,* 503 F.2d 995, 998 (2 Cir. 1974).

MULLIGAN, Circuit Judge:

(This opinion was initially prepared as a partial dissent. However, the concurrence of Judge Thomsen now renders it the majority opinion with respect to Count One of the indictment 71 Cr. 675 and Count One of indictment 71 Cr. 676. See note 12 in Judge Timbers' opinion *infra*. The following opinion has not been revised to reflect this change. A full Statement of the facts will be found in Judge Timbers' opinion.)

I dissent from that part of Judge Timbers' opinion which holds that the requirements of Rule 11 of the Federal Rules of Criminal Procedure were met here with respect to Count One of indictment 71 Cr. 675 and Count One of indictment 71 Cr. 676, each of which involved a conspiracy to sell stolen securities in interstate and foreign commerce in violation of 18 U.S.C. § 2314. I would, therefore, to that extent, reverse the order of the district court and give the appellant the opportunity to replead to these counts. I agree with Judge Timbers that there was no violation of Rule 11 with respect to the guilty plea to Count Three of indictment 71 Cr. 675, which charged a different conspiracy to violate section 2314. Since the court below sentenced the appellant to concurrent three-year terms on each of the three counts, I would remand to the district court for resentencing on Count Three in light of the invalidity of the other two pleas. See *United States v. Rivera*, 521 F.2d 125 (2d Cir. 1975); *McGee v. United States*, 462 F.2d 243, 247 (2d Cir. 1972).

The clear purport of Rule 11 is that the sentencing judge must determine that the conduct which the defendant admits on his questioning constitutes the offense charged in the indictment. *McCarthy v. United States*, 394 U.S. 459, 467, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). The record before us persuades me that Seiller's responses to Judge Cooper's questioning in the judge's effort to establish a factual basis for the guilty pleas to the two counts in question demonstrate a denial of criminal intent and therefore a tacit assertion of innocence rather than guilt. The conduct Seiller admitted to was without criminal intent and his admission of guilt therefore only indi-

cates his misunderstanding of the crime charged.

I call attention to the full text of footnote 6 of Judge Timbers' opinion, which is that portion of the transcript of the plea proceeding relating to Judge Cooper's questioning of Seiller in an effort to establish a factual basis for his plea of guilty to the two conspiracy counts at issue. After having the clerk read in full each of the indictments and after Seiller admitted that he was guilty of each crime, Judge Cooper, despite his initial reaction that the defendant was intelligent, that the language of the indictment was simple and basic and that consequently he might avoid inquiry into the factual basis element of Rule 11, nonetheless, and properly in my view, asked Seiller to recite what he did with respect to each charge. Seiller's response was that, in each of the cases, "I introduced parties to each other which committed then the crime of which I am accused. That is how I got involved in the conspiracy." This would probably suffice to establish the "togetherness" element of the conspiracy, that is to say, the confederation, the mutual participation in a joint venture. However, it did not provide any basis for establishing the specific criminal intent requisite for the crime—the intent to sell securities which were stolen. Judge Cooper very properly continued to press on to determine Seiller's knowledge as to how the securities were obtained. His response was that he did not know "in all three situations." Although Seiller did state that he knew his confederates were committing crimes, Judge Cooper asked if he knew the securities were stolen. With respect to both the United States Treasury bills and the securities which are the subject of the two indictments in question, Seiller specifically stated that he did *not* know they were stolen at the time he introduced the parties but only learned of their theft later on. The judge then said to Government counsel: "What do you say?" His response was, "That fairly sums it up, your Honor." Inexplicably, the voir dire was terminated.

I agree with Judge Timbers that the trial judge's questioning up to this point was comprehensive and searching. It estab-

lished, to me at least, from Seiller's responses that he considered that his introduction of those who were selling securities not then known to him to be stolen made him a member of a conspiracy to violate 18 U.S.C. § 2314. If that was his understanding, then the plea of guilty should have been rejected. At least at that juncture further questioning on the point was clearly in order.

Judge Timbers' opinion, of course, is not insensitive to the appellant's argument. In part, the opinion suggests that this case is distinguishable from our holding in *Irizarry v. United States,* 508 F.2d 960 (2d Cir. 1974), since the indictment here, which not only charged the combination but spelled out the element of intent, was fully read to the defendant. However, as the Assistant United States Attorney pointed out below, the court still had to assure itself of the factual basis for the admissions. It was at this point that Seiller's specific responses negated the specific intent to dispose of *stolen* securities. I agree that not all conspiracies are that complicated and that in some cases the reading of the indictment, including the overt acts charged, and the admission by the defendant of the acts described therein might well constitute a compliance with Rule 11. *Rizzo v. United States,* 516 F.2d 789, 794 (2d Cir. 1975); *Irizarry v. United States, supra,* 508 F.2d at 968 n. 9. However, this precise question is not before us because Judge Cooper continued the inquiry and elicited specific denials of guilty knowledge by Seiller which speak louder to me than his predictable monosyllabic admissions of understanding and guilt.

Judge Timbers' opinion also suggests that Seiller's denial of knowledge that the securities were stolen contradicts his earlier admission (see footnote 16 of Judge Timbers' opinion) that he knew that the parties with whom he acted were committing crimes. However, this answer did not satisfy Judge Cooper because he persisted in his examina-tion and, as the transcript indicates (see footnote 6 of Judge Timbers' opinion), Seiller then denied any criminal intent. In view of these specific responses and the failure of the court to further probe into the matter, I see no alternative but to accept Seiller at his word on the record before us.

Finally, Judge Timbers argues that the conspiracies charged were continuing and did not terminate until the date the indictments were filed. He further argues that Seiller points to nothing in the record of the plea proceeding which indicates that his knowledge was not obtained during the life of the conspiracy, citing *United States v. Badalamente,* 507 F.2d 12, 20 (2d Cir. 1974), cert. denied, 421 U.S. 911, 95 S.Ct. 1565, 43 L.Ed.2d 776 (1975). This argument is unpersuasive in my view. As the Supreme Court announced in *Santobello v. New York,* 404 U.S. 257, 261, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971):

> Fed.Rule Crim.Proc. 11, governing pleas in federal courts, now makes clear that the sentencing judge must develop, *on . the record,* the factual basis for the plea, as, for example, by having the accused describe the conduct that gave rise to the charge.

(Emphasis in original; footnote omitted). See also *McCarthy v. United States, supra,* 394 U.S. at 470, 89 S.Ct. 1166; *Irizarry v. United States, supra,* 508 F.2d at 967–68.* The failure of the record here to establish that Seiller had the requisite guilty knowledge prior to the termination of the conspiracy therefore fatally flaws the plea of guilty. The obligation to establish this basic element of specific intent was upon the trial judge and we cannot now rely upon speculation or cast the burden upon Seiller of proving that his guilty knowledge was only obtained sometime after the indictment was filed. Having admitted that he

---

\* In view of this authority, I believe it is inappropriate to supplement the record by reference to *United States v. Infanti,* 474 F.2d 522 (2d Cir. 1973), either to determine Seiller's significant role in the conspiracy (see footnote 7 of Judge Timbers' opinion) or his sophistication and intelligence (see footnote 12 of Judge Timbers' opinion). See *Irizarry v. United States, supra,* 508 F.2d at 967–68 (holding that the district judge may rely upon any facts at his disposal, not just the admissions of the defendant, in evaluating the existence of a factual basis for the plea, but that any additional material relied upon must be made a part of the record of the plea proceedings).

later learned that the securities in issue were stolen, it was the obligation of the court to ascertain the time of the origin of this knowledge and the nexus between that knowledge and Seiller's then-role in the conspiracy.

Aside from this, I would emphasize that Seiller's only admission of personal activity in the criminal enterprise was the introduction of his partners to the prospective purchasers. There is nothing in the record to establish any further activity by him and he said that he did not know at that time that the subjects of the sale were stolen. It is further noteworthy that, although the indictment charges a continuing conspiracy, the only overt acts charged in Count One of indictment 71 Cr. 675 which mention Seiller are a meeting and the sending of a telex, both on one day, September 29, 1969. In Count One of indictment 71 Cr. 676, Seiller's overt acts are the sending of letters on the 19th, 24th and 29th of December, 1969, plus a telex on December 27, 1969. In sum, as far as the record before us discloses, Seiller's only participation was limited to arranging introductions over a very brief period of time late in 1969, with nothing to indicate any further factual participation by him in 1970 and 1971. Hence, even if we were permitted to speculate, the exercise is unproductive.

Judge Timbers' reliance on *Badalamente* is misplaced. That was not a Rule 11 case and the conviction there after a full jury trial was, we found, supported by a record which established the defendant's continuing participation, particularly his presence and comments at a significant meeting, which amply justified the jury's determination that he had the unlawful intent required. It is basic, of course, that the participation of a conspirator from the inception of the conspiracy to the termination date charged in the indictment is unnecessary to a conviction of that conspirator. See *United States v. Torres,* 503 F.2d 1120, 1124 n. 2 (2d Cir. 1974); *United States v. Flaxman,* 495 F.2d 344, 347 (7th Cir.), cert. denied, 419 U.S. 1031, 95 S.Ct. 512, 42 L.Ed.2d 306 (1974); *United States v. Ste-*

*phens,* 492 F.2d 1367, 1373 (6th Cir.), cert. denied, 419 U.S. 874, 95 S.Ct. 136, 42 L.Ed.2d 114 (1974); *United States v. Dardi,* 330 F.2d 316, 329 (2d Cir.), cert. denied, 379 U.S. 845, 85 S.Ct. 50, 13 L.Ed.2d 50 (1964). The question rather is what role did a particular defendant play in the overall venture and, when he did play that role, did he know the purpose of, and did he share in, the specific criminal venture of his playmates. Here the record of Seiller's admissions, which is all that we can look at, discloses that he brought seller and purchaser together, but he said he did not know when he did so that the transaction was meretricious. In view of the apparent satisfaction of the trial judge and counsel for the Government with Seiller's responses and the absence of any further exploration of this matter, I would vote to reverse the denial of the motion under 28 U.S.C. § 2255 to vacate the judgment of convictions upon two counts and remand for resentencing on the third.